OPINION
{¶ 1} Defendant-Appellant, Juan A. Perez, appeals a judgment of conviction and sentence entered by the Defiance County Court of Common Pleas, finding him guilty of one count of unlawful sexual conduct with a minor and three counts of gross sexual imposition. Perez maintains that the trial court erred by allowing the prosecution to comment on his decision to demand a lawyer during police interrogation. Perez also maintains that the trial court improperly allowed the introduction of evidence concerning a prior conviction and other bad acts and that his convictions for gross sexual imposition were against the manifest weight of the evidence. Furthermore, Perez maintains that the failure of his trial counsel to raise these errors resulted in the ineffective assistance of trial counsel and that the cumulative effect of these errors denied him a fair trial. Regarding the sentencing stage, Perez maintains that the trial court erred in imposing consecutive sentences and by finding that he is a sexual predator. Having reviewed the entire record and the relevant case law, we find that statements and questions on the part of the prosecutor regarding Perez's decision to exercise his Fifth Amendment rights denied Perez a fair trial. Accordingly, Perez's first assignment of error is sustained and the judgment of the trial court is reversed and the cause is remanded.
 {¶ 2} In May of 2003, the Defiance County Sheriff's Office began investigating the allegations of several female juveniles that Perez had sexually assaulted them. All of the allegations were made by friends of Perez's daughter and involved Perez engaging in forced sexual activity with the victims while they were visiting his daughter. The allegations ranged from sexual intercourse to digital penetration of the vagina, to the rubbing of breasts, legs, and buttocks.
 {¶ 3} Based on these allegations, Perez was brought into the police station, read his Miranda rights, and questioned by the police. Perez admitted to the police that he had contact with one of the victims in his daughter's bed the night of one of the alleged attacks, but denied that the encounter had been sexual in nature. Eventually, Perez evoked his right to remain silent and requested a lawyer.
 {¶ 4} Subsequently, Perez was brought before the grand jury and an eight count indictment was returned against him. Counts One and Four charged Perez with rape in violation of R.C.2907.02(A)(1)(b), felonies of the first degree. Count Two charged him with unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), a felony of the third degree. Count Three charged him with gross sexual imposition in violation of R.C.2907.05(A)(4), a felony of the third degree. Count Five charged him with one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. Counts Six, Seven, and Eight charged him with gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree.
 {¶ 5} Perez entered a plea of not guilty, and the matter was brought before a jury for trial. After the presentation of evidence, the jury returned not guilty verdicts on Counts One, Three, Four, and Five. The jury returned verdicts of guilty on Counts Two, Six, Seven, and Eight. The trial court ordered a pre-sentence investigation and alerted the parties that a sexual offender classification hearing would be held at the same time as the sentencing hearing.
 {¶ 6} Prior to the sentencing hearing, Perez filed a motion for a new trial based upon juror misconduct. However, according to a negotiated plea agreement, Perez agreed to dismiss the motion for a new trial and the state agreed to recommend a sentence of three years on each count to be served consecutively for an aggregate sentence of twelve years incarceration. At the sentencing hearing, the trial court accepted the recommendation and sentenced Perez accordingly. The trial court also held a sexual offender classification hearing and found Perez to be a sexual predator. From this conviction and sentence Perez appeals, presenting seven assignments of error for our review.
 Assignment of Error I The trial court committed error by allowing the prosecutor tointroduce evidence and to cross-examine the Appellant on hisassertion of his Fifth Amendment rights.
 Assignment of Error II Appellant was denied the right to effective assistance ofcounsel and he was prejudiced as a result.
 Assignment of Error III The trial court committed plain error by allowing theprosecutor to introduce evidence on Appellant's prior convictionand by allowing improper evidence of other acts that wereprejudicial to Appellant.
 Assignment of Error IV The State failed to present sufficient evidence to each andevery element of gross sexual imposition in violation of OhioRevised Code 2907.05(A)(4) as alleged in counts six, seven, eightof the indictment for a jury to find that the Appellant committedgross sexual imposition.
 Assignment of Error V Due to the cumulative errors committed at trial, Appellant wasdenied his constitutional right to a fair trial.
 Assignment of Error VI The trial court erred when it imposed consecutive sentences.
 Assignment or Error VII The trial court's determination that Appellant is a sexualpredator is against the manifest weight of the evidence.
 Assignment of Error I {¶ 7} In his first assignment of error, Perez contends that the prosecution improperly addressed his refusal to speak with the investigating police officers. He asserts that certain comments and questions by the prosecution throughout the trial violated his Fifth Amendment right to avoid self incrimination.
 {¶ 8} The Fifth Amendment to the Constitution of the United States provides that no person "shall be compelled in any criminal case to be a witness against himself." This Amendment is made applicable to the states through the due process clause of the Fourteenth Amendment. Malloy v. Hogan (1964), 378 U.S. 1,6, 84 S.Ct. 1489.
 {¶ 9} In interpreting the Fifth Amendment, the United States Supreme Court has found that criminal suspects in the custody of the police enjoy certain rights during interrogation. Miranda v.Arizona (1966), 384 U.S. 436, 478-479, 86 S.Ct. 1602. These rights include the right to remain silent and the right to have counsel present during the interrogation. Id. at 467-468. "Once an accused invokes his right to counsel, all further custodial interrogation must cease and may not be resumed in the absence of counsel unless the accused thereafter effects a valid waiver or himself renews communication with the police." State v.Knuckles (1992), 65 Ohio St.3d 494, paragraph one of the syllabus, citing State v. Williams (1983), 6 Ohio St.3d 281, paragraph four of the syllabus.
 {¶ 10} A defendant's decision to exercise his right to remain silent during police interrogation is generally inadmissible at trial either for the purpose of impeachment or as substantive evidence of guilt. State v. Leach, 102 Ohio St.3d 135,2004-Ohio-2147, at ¶ 16-18, (decided May 12, 2004, after the trial of this case); see, also, Doyle v. Ohio (1976),426 U.S. 610, 616-618, 96 S.Ct. 2240; Wainwright v. Greenfield (1986),474 U.S. 284, 291, 106 S.Ct. 634. Furthermore, evidence introduced by the state during its case in chief regarding the defendant's exercise of his right to remain silent during interrogation violates the Due Process Clause of both the state and federal constitutions. Leach at ¶ 18. This rule enforces one of the underlying policies of the Fifth Amendment, which is to avoid having the jury assume that a defendant's silence equates with guilt. Id. at ¶ 30, citing Murphy v. WaterfrontComm. of New York Harbor (1964), 378 U.S. 52, 55, 84 S.Ct. 1594. However, the introduction of evidence concerning a defendant's decision to remain silent does not constitute reversible error if, based on the whole record, the evidence was harmless beyond any reasonable doubt. State v. Zimmerman (1985),18 Ohio St.3d 43, 45
 {¶ 11} In this case Perez was brought to the police station for interrogation and received notice of his Miranda rights. Initially, he began answering the police officer's questions. However, he eventually evoked his Fifth Amendment right to remain silent and requested a lawyer. Perez contends that his decision to request a lawyer was wrongfully brought before the jury by comments on the part of the prosecutor during opening and closing statements and testimony elicited during the state's case in chief.
 {¶ 12} The first instance that Perez claims violated his Fifth Amendment rights occurred during the prosecution's opening statement. During the opening statement the prosecutor stated the following:
Another part of the evidence particularly related to thisoffense is that when the Defendant was interviewed by DeputyWaxler, the evidence will show that the Defendant made anadmission that, in fact, yes, Alicia Mudrack did spend the nightthere, yes, she was asleep late in the middle of the night, andyes, he had been drinking heavily, and yes, he went in and laiddown beside her in this bedroom that she was sharing at the timealso with this Defendant's daughter during this sleepoversituation. At this point he stops short the testimony will showof admitting any sexual activity. But in all other respectseffectively verifies Alicia Mudrack's testimony in this case.
(Trial transcript vol. I, page 198.)
 {¶ 13} Perez claims that this amounts to comment on the part of the prosecutor about his decision to remain silent. We disagree.
 {¶ 14} Nowhere in the prosecution's statements is there any mention of Perez's request for a lawyer or refusal to continue answering questions. Rather, the prosecution merely comments on the content of Perez's admissions that were made after he had received the Miranda warnings and before he had requested a lawyer. There is not even an inference to be drawn from the above language that Perez refused to speak to the police or requested a lawyer. The prosecution merely states that Perez admitted having some contact with one of the victims, but did not admit to engaging in any sexual activity with the victim. Nowhere in the prosecution's opening statement is there any reference to Perez's refusal to speak with the police or his request for a lawyer. Indeed, the above manner of referring to Perez's statements would be the preferred way for a prosecutor to handle the situation where a suspect begins to cooperate and gives admissible evidence, then decides to invoke his right to remain silent and requests a lawyer. Rather than insinuating that Perez made a decision to exercise his rights and not talk with the police, the prosecution merely informed the jury what the evidence would prove and what it would not prove. We find that the above language did not bring inadmissible evidence of Perez's silence before the jury.
 {¶ 15} The second situation that Perez complains of involves the direct examination by the state during its case in chief of an investigating police officer, Deputy Waxler. Deputy Waxler testified that Perez "admitted he knew Korena and that she liked to be with him, that he had allowed her to, I believe, steer his truck once while he operated the brake and foot pedal. And at that point he advised me he wanted a lawyer and said I'm going to go to jail like in Indiana again, aren't I?" (Trial transcript, Vol. I, page 242.) An objection to this testimony was raised by Perez's trial counsel, but was summarily dismissed by the trial court.
 {¶ 16} The Ohio Supreme Court recently addressed a similar situation in State v. Leach. In Leach, a police officer also testified that the defendant was advised of his Miranda rights, answered a few questions and then asked for an attorney. Leach
at ¶ 15. In finding that it was error for such a statement to come into evidence, the Court found that "[i]f `silence will carry no penalty,' then allowing the state to use the defendant's decision to consult an attorney after the defendant was advised of his rights, violated the Due Process Clauses of the state and federal Constitutions." Id. at ¶ 18, quoting Doyle,426 U.S. at 618.
 {¶ 17} Accordingly, it was error for the trial court to overrule defense counsel's objection to Deputy Waxler's testimony and allow into evidence Perez's decision to remain silent. The next query is whether, based upon the whole record, such error constituted harmless error beyond a reasonable doubt. This error will only be found harmless if it is clear, beyond any reasonable doubt, that absent the allusion to Perez's invocation of his right to remain silent, the jury would have returned a verdict of guilty. Zimmerman, 18 Ohio St.3d at 45.
 {¶ 18} In Leach, the Court addressed the dangers of allowing into evidence a defendant's decision to remain silent. Specifically, it mentioned that a defendant in such a situation would be forced to choose between allowing the jury to infer guilt from his prior silence and taking the stand in order to explain the prior silence. Id. at ¶ 31. This is exactly what happened to Perez.
 {¶ 19} After evidence of his silence during interrogation was allowed to come before the jury, Perez took the stand and attempted to explain why he had not spoken with the police. In fact, Perez was cross-examined by the prosecution in great detail concerning his decision to remain silent. The prosecution specifically asked Perez, "why didn't you just say, well, Deputy, that can't be true. There won't be any DNA. I didn't do these things. Instead you said, `I got to have a lawyer.'" (Trial transcript Vol. II, page 292.) The prosecution went on to ask Perez "[i]f people have something to hide, they don't want to talk to the police? Isn't that usually the case?" (Trial transcript Vol. II, page 293). Furthermore, during closing arguments, the prosecution stated to the jury that the reason Perez had invoked his right to remain silent was because he knew that the "gig" was up. (Trial transcript Vol. III, page 76.)
 {¶ 20} It is clear from these comments that the introduction of evidence concerning Perez's right to remain silent cannot be found to be harmless error beyond a reasonable doubt. Because Perez's silence was admitted into evidence, he was forced to testify and explain why he had remained silent. Additionally, the prosecution used Perez's testimony to infer to the jury that his silence implied that he was guilty. This is the exact situation that was meant to be avoided by having a defendant's silence remain inadmissible and a clear violation of Perez's due process rights.
 {¶ 21} The evidence of Perez's guilt in this case was far from overwhelming. The state presented no physical evidence and was unable to even provide an exact date for many of the alleged attacks. The only evidence that the state did provide was the testimony of the alleged victims, and Perez was able to provide witnesses who contradicted much of what the alleged victims claimed happened. This case boiled down to an issue of credibility, whether the jury should believe the victims' version of the events or Perez's version of the events. Clearly the jury could have been influenced by the knowledge that Perez chose to remain silent during the police interrogation, and we cannot say beyond a reasonable doubt that Perez would have been convicted absent the trial court's error of admitting into evidence Perez's prior silence.
 {¶ 22} This is not a situation where a vague and isolated remark was made concerning the defendant's decision to request counsel. In this situation, the defendant was forced to take the stand and defend his prior silence, and the state used the prior silence to infer to the jury that Perez was guilty. Accordingly, we find that the trial court committed reversible error by allowing into evidence Perez's decision to remain silent during police interrogation. Therefore, Perez's first assignment of error is affirmed, and the judgment of the trial court is reversed.
 Assignments of Error II-VII {¶ 23} Based on the above decision, Perez's assignments of error II-VII have been rendered moot. Accordingly, they will not be addressed by this court. See, App.R. 12(A)(1)(c).
 {¶ 24} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
 Judgment reversed and cause remanded.
 Cupp and Bryant, JJ., concur.