[Cite as *State v. Roby*, 2010-Ohio-1498.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,           CASE NO. 12-09-09

    v.

RICHARD A. ROBY,              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2009CR23

Judgment Affirmed

Date of Decision: April 5, 2010

APPEARANCES:

    *Kelly J. Rauch* for Appellant

    *Todd C. Schroeder* for Appellee

**WILLAMOWSKI, P.J.,**

{¶1} Defendant-Appellant, Richard A. Roby ("Roby"), appeals the judgment of the Putnam County Court of Common Pleas after a jury trial finding him guilty of burglary, receiving stolen property, and possession of criminal tools. On appeal, Roby claims that the prosecutor made improper references to his assertion of his Fifth Amendment rights; that the state failed to present sufficient evidence for the jury to find him guilty; and that he was denied his right to effective assistance of counsel. For the reasons set forth below, the judgment is affirmed.

{¶2} Roby was arrested after he broke into a parked semi-truck equipped for overnight accommodation. The State accused Roby of attempting to commit a theft offense. Roby admitted that he broke into the truck, but claimed that he had been hitchhiking and that he was just looking for a place to sleep because it was cold outside.

{¶3} On April 4, 2009, two truck drivers, Jerry Miller ("Jerry") and Samuel Schultz ("Sam") were scheduled to drive their semi-trucks from Kalida, Ohio, to Alabama. Their trucks were parked side-by-side in the parking lot of Kalida Equipment Leasing in preparation for the trip. They had agreed to depart around 9:00 to 9:30 p.m. and drive through the night. Jerry had arrived at his truck earlier in the evening and was trying to take a nap in the sleeping

compartment of his truck before the trip. At approximately 9:00 p.m., he looked out his window when he heard a loud noise and saw Roby breaking into Sam's truck. Jerry called 9-1-1 and reported to the dispatcher what he was observing. Jerry stated that he saw a light moving around from within the cab and that it was clear someone was moving throughout the cab as the truck itself was shifting back and forth. Jerry remained on the phone until Deputy Mark Doster from the Putnam County Sheriff's office arrived on the scene a few minutes later.

{¶4} When the deputy arrived, Roby jumped out of the truck and started to run away down towards a creek. Deputy Doster pursued Roby on foot, informed him that he was from the Sheriff's Office, and told him that if he did not stop he was going to use his Taser on him. Roby stopped running and was taken into custody.

{¶5} Sam arrived at the scene shortly after Roby's arrest and noticed that several of his personal items, a TV, DVD's, a CB box, and other items, had been removed from the sleeping area of his cab and placed in the front seat of his truck. Then, the owner of Kalida Equipment Leasing, Urban Selhorst ("Urban"), arrived on the scene and observed a white van with Indiana license plates on the property that did not belong there. Further investigation revealed that the van had been stolen from Indianapolis on March 27, 2009. A search of the van disclosed personal property that authorities claimed was connected to Roby.

{¶6} On May 1, 2009, the Putnam County Grand Jury indicted Roby on the following four charges: Count I – Burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree; Count II – Receiving Stolen Property, in violation of R.C. 2913.1(A), a felony of the fourth degree; Count III – Receiving Stolen Property, in violation of R.C. 2913.1(A), a felony of the fifth degree; and, Count IV – Possession of Criminal Tools, in violation of R.C. 2923.24(A), a felony of the fifth degree. Count III, the second charge for receiving stolen property, was dismissed before trial.

{¶7} On September 14, 2009, a jury trial was held. At trial, Jerry testified to hearing the break-in, calling 9-1-1, and verified what he observed while Roby was in the trailer and being pursued. Sam testified as to how his belongings had been removed from his sleeping compartment and placed on the front seat of the truck. Both testified that it had been their intent to depart between 9:00 and 9:30 p.m. that day. Urban testified that he noticed a white van which did not belong on his property.

{¶8} Deputy Doster then testified to chasing and apprehending Roby. He also identified numerous photos of the crime scene that he had taken that evening and they were admitted as exhibits. Deputy Doster also identified photos he had taken of the screwdriver and flashlight that he discovered shortly after apprehending Roby. The deputy believed Roby discarded the flashlight and

-4-

screwdriver in the grass as he was being chased, but admitted that he didn't see him throw the items.

**{¶9}** Lieutenant Marvin Schweibert, also from the Putnam County Sherriff's office, testified that he arrived at the scene after Roby was apprehended and investigated the crime scene and the white van. Lieutenant Schweibert, the lead investigator for the Detective Division, also testified to finding a cell phone and copies of money grams in the white van that connected the vehicle to Roby.

**{¶10}** At the conclusion of the State's evidence, Roby testified on his own behalf. Roby admitted to numerous previous convictions for theft, breaking and entering, and receiving stolen property, but insisted that his only motive in breaking into this truck was to find a place to sleep for the night. He also disavowed any connection with the white van and its contents. Roby stated that he did not have a flashlight or screwdriver, and claimed that he broke the truck window with his elbow. He also denied moving the TV and other property in the truck.

**{¶11}** The jury found Roby guilty beyond a reasonable doubt of all three pending charges. On September 22, 2009, the trial court held a sentencing hearing. The trial court reviewed the pre-sentence investigation report and found that Roby's extensive criminal conduct had been on-going for forty-four years and that he had at least eleven different prison commitments. As a result, the trial

court imposed maximum and consecutive sentences for a total of ten years and six months in prison (eight years on Count I, eighteen months on Count II, and twelve months on Count IV). It is from this judgment that Roby appeals, raising the following five assignments of error.

## First Assignment of Error

**The trial court committed error by allowing the prosecutor to make statements and introduce evidence regarding [Roby's] assertion of his Fifth Amendment Rights.**

## Second Assignment of Error

**The State failed to present sufficient evidence for the jury to find that [Roby] was guilty of burglary in violation of Ohio Revised Code Section 2911.12(A)(2) beyond a reasonable doubt.**

## Third Assignment of Error

**The State failed to present sufficient evidence for the jury to find that [Roby] was guilty of possession of criminal tools in violation of Ohio Revised Code Section 2923.24(A) beyond a reasonable doubt.**

## Fourth Assignment of Error

**The State failed to present sufficient evidence for the jury to find that [Roby] was guilty of receiving stolen property in violation of Ohio Revised Code Section 2913.51(A) beyond a reasonable doubt.**

## Fifth Assignment of Error

**[Roby] was denied the right to effective assistance of counsel and he was prejudiced as a result.**

*First Assignment of Error*

**{¶12}** In his first assignment of error, Roby asserts that the prosecutor violated his Fifth Amendment rights by improperly eliciting testimony regarding Roby's silence after his arrest. Although these statements were not objected to in the trial court, Roby contends that these errors amount to plain error and the trial court's failure to uphold his constitutional right to remain silent constitutes reversible error. The State asserts that no such error exists because the testimony elicited regarding Roby's post arrest silence was made in fair response to defense counsel's questions as to whether law enforcement had questioned Roby about the charged offenses.

**{¶13}** Although a court will not generally consider alleged errors that were not brought to the attention of the trial court, Crim.R. 52(b) provides that the court may consider such errors affecting substantial rights. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶108.

**{¶14}** Evidence submitted by the State regarding a defendant's exercise of his right to remain silent during an interrogation violates the Due Process Clause of both the state and federal constitutions. *Doyle v. Ohio* (1976), 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91; *State v. Leach*, 102 Ohio St.3d 135, 807

N.E.2d 335, 2004-Ohio-2147, ¶18. "A defendant's decision to exercise his right to remain silent during police interrogation is generally inadmissible at trial either for purposes of impeachment or as substantive evidence of guilt." *State v. Perez*, 3d Dist. No. 4-03-49, 2004-Ohio-4007, ¶10, citing *Leach*, 2004-Ohio-2147. Use of a defendant's silence in the state's case-in-chief puts a defendant in the position of having to choose between allowing a jury to infer guilt from his silence or being forced to take the stand to explain his prior silence, thereby surrendering his right not to testify. *Perez*, 2004-Ohio-4007, at ¶20. Nevertheless, the introduction of evidence regarding a defendant's decision to remain silent does not constitute reversible error if, based on the whole record, the evidence was harmless beyond any reasonable doubt. *State v. Zimmerman* (1985), 18 Ohio St.3d 43, 45, 479 N.E.2d 862. The Ohio Supreme Court has held that "[a] single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." *State v. Treesh*, 90 Ohio St.3d 460, 2001-Ohio-4, 739 N.E.2d 749; *State v. Welch*, 3d Dist. No. 16-06-02, 2006-Ohio-6684, ¶10.

{¶15} Roby complains about the following line of questions posed by the State in its direct examination of Lieutenant Schweibert:

> **Q:** **And upon initiation of that interview, did you advise the defendant of his rights?**

> **Lieutenant: Right. *** I advised him of his Miranda rights and made sure he understood it before anything was asked of him.**
>
> **Q: And was it your intention to ask him about the crime and the van and get his responses to those sort of questions?**
>
> **Lieutenant: Correct.**
>
> **Q: And did you have an opportunity to ask those questions?**
>
> **Lieutenant: Right after I advised him of his Miranda warning, he advised me that he would like to exercise his right to remain silent and seek counsel.**
>
> **Q: And so did you then have an opportunity to ask him about the van?**
>
> **Lieutenant: Once he advised or indicated he wanted counsel, remain silent, the interview stopped.**

Trial Tr., p. 120, lines 3-25.

{¶16} If we look at the entire trial transcript as a whole, we find that this line of questioning was not impermissible because the defense had first opened the door to the topic of Roby's post-arrest silence. The United States Supreme Court has held that the Fifth Amendment does not prohibit references to a defendant's invocation of the right against self-incrimination when the references are made in "fair response" to the defense's claims. *United States v. Robinson* (1988), 485 U.S. 25, 32-34, 108 S.Ct. 864, 99 L.Ed.2d 23; *State v. Ferguson*, 10th Dist. No. 07AP-999, 2008-Ohio-6677, ¶51.

{¶17} Prior to the State's questioning of Lieutenant Schweibert above, defense had asked Deputy Doster if Roby had been questioned about the tools and the break-in. As a result of that exchange, the defense left the jury with the impression that the law enforcement officers' investigation and interrogation were inadequate in that Roby was not questioned about the charged offenses. That is because defense counsel had *first* asked Detective Doster the following questions:

> **Q:   Okay.  But then you said also too that you took pictures of the items from the van because you believe those were the tools used to break into the semi?**
>
> **Detective:     Into some semis or break into things, yes.**
>
> **Q:   Okay, but they weren't the tools that were used in this particular break-in?**
>
> **Detective:    No.**
>
> **Q:   Did you question my client as far as this situation?**
>
> **Detective:    As far as the breaking into the semi?**
>
> **Q:   Yes.**
>
> **Detective:    No, I did not.**
>
> **Q.   Did you ask my client how he had gotten there that night?**
>
> **Detective:    No, I did not.**
>
> **Q.   Okay, so you don't know how he got there?**
>
> **Detective:    No, I do not.**

> **Q.    So any connection that he may have to this white van is, you don't know?**

Trial Tr. p.111, lines 4-25.

{¶18} We do not find that the State's testimony in response to the defense counsel's questions violated Roby's Fifth Amendment rights. Lieutenant Schweibert's testimony made minimal mention of Roby's silence, and only to clarify Detective Doster's previous response to defense counsel's question that implied that the officers had failed to question Roby and thoroughly investigate the matter. This is in contrast to cases where a *Doyle* violation was found when the state attempted to use the defendant's exercise of Fifth Amendment rights to impute the inference of guilt. See, e.g., *State v. Leach* (the prosecutor mentioned the defendant's pre-arrest silence in the opening statement, the prosecution elicited testimony on the defendant's pre-arrest silence through its own initiative, and the prosecution used the testimony as evidence of the defendant's guilt).

{¶19} The facts in this case are similar to those in *State v. Reed*, where the officer testified that the defendant refused to answer questions after being read his rights, but only after defense counsel invited the testimony based on the cross-examination of the police officer. *State v. Reed*, 10th Dist. No. 08AP-20, 2008-Ohio-6082, ¶21. See, also, *State v. Thompson,* 10th Dist. No. 08AP-956, 2009-Ohio-3552, ¶¶21-24 (finding that a prosecutor may question a defendant about post-arrest silence without a *Doyle* violation if the defendant has raised the issue

on direct examination); *State v. Lamb*, Butler App. No. CA 2002-07-171, 2003-Ohio-3870 (no *Doyle* violation of prosecutor's cross-examination of the defendant regarding the defendant's post-arrest, post-Miranda silence where the issue was first raised by the defendant); *State v. Eason*, (no violation of Fifth Amendment rights where the prosecutor commented on the defendant's post-arrest silence when the defendant testified about his silence as part of his defense); *State v. Vance*, Ashland App. No.2007-COA-035, 2008-Ohio-4763 (the prosecutor did not initially question the deputy about the defendant's post-arrest silence; the inquiry was made only after the defense raised the subject.)

**{¶20}** Furthermore, the State requested a bench conference prior to questioning the lieutenant and put all parties on notice of the State's intent to elicit testimony that law enforcement did attempt to ask Roby such questions, but that they were not able to follow through because Roby exercised his right to remain silent. The record supported the fact that this testimony was elicited only to give the jury a more accurate perception of the interrogation of Roby. The transcript verified that the State did not overemphasize Roby's assertion of his Fifth Amendment rights; it did not imply that his silence equated to guilt; and, it did not reference Roby's silence at any point thereafter.

**{¶21}** We find that the references to Roby's assertion of his right to remain silent were permissible as a "fair response" to defense counsel's raising the issue

and were not a violation of Roby's constitution rights. Furthermore, even if it would have been error, Roby failed to show he suffered any prejudice that would have constituted plain error. Roby alluded that he "had no choice but to testify to explain his silence," and that because he took the stand, information concerning prior convictions came before the jury. Contrary to this assertion, in the opening statement defense counsel had already represented that Roby was going to testify. Therefore, his decision to take the stand had been made earlier and was not done to explain why he exercised his right to remain silent. The first assignment of error is overruled.

*Second Assignment of Error*

{¶22} In his second, third, and fourth assignments of error, Roby contends that the State failed to present sufficient evidence for each of the charges such that a rational jury could have found all elements of each crime had been proven beyond a reasonable doubt. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence submitted at trial, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997-Ohio- 52, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. The standard of review is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks*, supra. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶23} In the second assignment of error, Roby asserts that the State failed to prove any of the elements of R.C. 2911.12(A)(2), burglary, which states that "no person by force, stealth or deception shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." The State was required to prove the following: 1) that the offender trespassed into an occupied structure that was the permanent or temporary habitation of another person; 2) that another person was present or likely to be present; and 3) the purpose for trespassing was to commit a criminal offense.

{¶24} First, Roby contends that the State failed to present evidence that he, or an objective person looking at the semi-truck, would know that it was equipped with a bed and that it would qualify as an "occupied structure." Second, he claims that the state failed to prove that another person was "likely" to be present. And finally, he argues that the State failed to present sufficient evidence to prove that

Roby intended to commit a theft in the vehicle. Our review of the record finds that there was sufficient evidence to support Roby's conviction for burglary as a matter of law.

{¶25} The testimony at trial clearly established that the semi-truck was an "occupied structure" according to the definition in R.C. 2909.01(C):

> **(C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:**
>
> **(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.**
>
> **(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.**
>
> **(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.**
>
> **(4) At the time, any person is present or likely to be present in it.**

When determining whether a structure is an "occupied structure," the question is if the dwelling has a residential purpose, not whether the occupant is actually present. *State v. Hunt*, 3d Dist. No. 3-09-06, 2009-Ohio-5435, ¶6. The definition does not specify that the structure must appear to be an occupied structure. Therefore, contrary to Roby's assertion, the State was not required to present any

evidence that either Roby or an "objective person" would know that it was equipped with a bed.

{¶26} The testimony at trial clearly established that the vehicle in question was a truck that was maintained as a temporary dwelling when Sam was on the road, whether or not Sam or any other person was actually present at the time. In addition, the testimony of Jerry and Sam verified that the truck was specially adapted for the overnight accommodation of a person, specifically that the truck contained a compartment behind the seats equipped with a bed, TV, microwave, dresser drawers, and other amenities. See *State v. Jett*, 12th Dist. No. 393, 1982 WL 3126 (finding that truck equipped with a mattress behind the seats for sleeping was an occupied structure according to the statutory definition.) Roby himself testified that he intended to sleep in the truck.

{¶27} Testimony further established the fact that Sam was "likely" to be present at the time. Ohio courts have stated that while the term "likely" connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. *State v. Green* (1984), 18 Ohio App.3d 69, 72, 480 N.E.2d 1128. A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. Id.; *State v. Dewitt*, 3d Dist. No. 1-09-25, 2009-Ohio-5903, ¶9. The issue is not whether the burglar subjectively believed that persons were likely to be

there, but whether it was objectively likely. *State v. McCoy*, 10th Dist. No. 07AP-769, 2008-Ohio-3293, ¶21. Therefore, the issue is not whether Roby concluded that a person was not present or not likely to be present, but whether the circumstances at the time of the offense justified a logical expectation that a person could be present.

{¶28} The testimony of Jerry and Sam not only established that Sam could have been present at the time of the offense, but also established that he was planning to be present at that time. Jerry testified that he and Sam were scheduled to make a delivery in Alabama and had agreed to leave around 9:00 to 9:30 p.m. Sam's testimony was consistent with Jerry's testimony, affirming that it was his plan and intention to arrive at his truck at 9:00 p.m., even though he didn't actually arrive until about 9:15 p.m. Jerry and Sam further testified that it was common to arrive at the truck prior to the departure time to either take a nap before driving all night, or to prepare the truck for the journey. In fact, Jerry was in his truck parked right next to Sam's truck, even though the lights were off and it did not appear to be occupied. Roby could just as easily have broken into Jerry's truck which actually *would have been occupied* at the time.

{¶29} And finally, although Roby testified that his intention for breaking into the truck was to find a place to sleep, there was considerable evidence that would allow a jury to find that he intended to commit a theft. The deputy testified,

and provided a photograph, showing that there were many items sitting on the passenger seat of the vehicle, such as a briefcase and television. Sam testified that his television had been removed from its place in the sleeping compartment and that the casings holding the television in its place had been pried off. Sam further testified that DVDs and other personal property had been in the drawers and cupboards of his sleeping compartment, but they had all been moved to the front seat and floor area. There was considerable evidence from which a juror could conclude that Roby was gathering the valuables together prior to removing them from the truck.

{¶30} We find that as a matter of law there was sufficient evidence that the truck met the definition of an "occupied structure;" that an objective person could find that Sam was likely to be there; and, that Roby intended to commit a theft offense. Finding sufficient evidence of all of the elements of R.C. 2911.12(A)(2) for a jury to find Roby guilty beyond a reasonable doubt of burglary, we overrule Roby's second assignment of error.

*Third Assignment of Error*

{¶31} In his third assignment of error, Roby asserts that the State failed to present sufficient evidence that he was guilty of possession of criminal tools pursuant to R.C. 2923.24. Roby claims that he was wearing gloves because it was

cold, not to hide fingerprints or protect his hands. He further denies that the flashlight and screwdriver which were found at the scene belonged to him:

**{¶32}** R.C. 2923.24 states:

**[n]o person shall have or possess under the person's control any substance, device, instrument, or article, with the purpose to use it criminally. \*\*\***

**Whoever violates this section is guilty of possessing criminal tools. \*\*\*\* If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.**

**{¶33}** Again, we find that viewing the evidence in the light most favorable to the prosecution, it was entirely possible that a trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. Jerry testified that it appeared that Roby was using a flashlight within the truck when he observed him moving around in the vehicle. Sam stated that the trim around the TV cabinet had been removed, or "busted off." Roby admitted that he was wearing gloves at the time of the offense. In addition to that testimony, a flashlight and screwdriver were found at the scene. While Deputy Doster acknowledged that he did not actually see Roby with those items, it was his belief that Roby had discarded those items based on the location where they were found. And finally, Lieutenant Schweibert testified to finding tools in the white van that were commonly used to remove CB radios, antennas, and other electronics.

**{¶34}** Based on the above testimony and photographic evidence presented at trial, we find that there was sufficient evidence of all of the elements of R.C. 2923.24 for a jury to find Roby guilty beyond a reasonable doubt of possession of criminal tools. Roby's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶35}** Roby also argues that there was insufficient evidence to convict him of receiving stolen property, in violation of R.C. 2913.51. This charge was related to the white van that was found in the Kalida Equipment Leasing parking lot, and the items that were inside of that van. Roby states that the State failed to prove that Roby had possession and control of the van and that there was insufficient evidence linking him to that van.

**{¶36}** Pursuant to R.C. 2913.51, "(A) No person shall receive, retain or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense. *** (C) Whoever violates this section is guilty of receiving stolen property. *** If the property involved is a motor vehicle, *** receiving stolen property is a felony of the fourth degree."

**{¶37}** In his testimony, Roby disclaimed any knowledge of, or connection with, the white van with the Indiana license plates that was found in the parking

lot at the same time Roby was breaking into Sam's truck. He continued to insist that he arrived at the parking lot after hitchhiking.

{¶38} Records from the Indianapolis police department confirmed that the van had been reported stolen at the end of March, just a few days before this incident. Lieutenant Schweibert testified that the steering column was broken on the van, a further indication of a stolen vehicle. Lieutenant Schweibert also testified to finding a crumbled up $150 money gram receipt in the white van and that the names of Roby's son (Ryan Roby) and his former son-in-law (Steve Balo) were on the document. The lieutenant also found a pre-paid cellphone in the van showing several calls had been placed to Roby's daughter, Crystal. Lieutenant Schweibert had also contacted Steve Balo about the money gram and Mr. Balo confirmed that Roby had called him from that telephone number concerning the money gram.

{¶39} The jury apparently chose not to believe Roby's denial of any connection to the stolen white van. We find that there was sufficient evidence available to enable a reasonable jury to conclude that Roby had possession and control of the stolen vehicle. Roby's fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶40} In his final assignment of error, Roby asserts that he did not receive a fair trial based on the ineffectiveness of his trial counsel. He claims that his trial

counsel was ineffective in several aspects of the trial, including: 1) failure to object and/or move for a mistrial when the issue of his asserting his Fifth Amendment right to remain silent was raised; 2) failure to object to the admission of prior acts of theft; 3) allowing the admission of evidence of convictions that were older than ten years; and, 4) failure to object to the admission of hearsay statements by the State's witnesses concerning the money gram evidence that linked Roby to the white van. Roby argues that, in light of all of the above errors, his counsel's representation was so deficient that she was not functioning as counsel as guaranteed by the Sixth Amendment and there exists a strong probability that, but for counsel's errors, the result of the proceeding would have been different.

{¶41} The Supreme Court of Ohio has established a two-part test to determine if trial counsel was ineffective. First, the defendant must show that counsel's performance fell below objective standards of reasonable representation, and second, the defendant must show resulting prejudice. *State v. Dickinson*, 3d Dist. No. 11-08-08, 2009-Ohio-2099, ¶20, citing *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To show prejudice, the defendant must prove that there existed a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶42}** A defendant must also overcome the presumption that counsel is competent and must show that counsel's decisions were "not trial strategies prompted by reasonable professional judgment." *Dickinson* at ¶21, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Even unsuccessful tactical or strategic decisions will not constitute ineffective assistance of counsel. *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. An appellate court must review the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Stacy*, 3d Dist. No. 13-08-44, 2009-Ohio-3816, ¶20.

**{¶43}** On June 10, 2009, Roby requested that his previous court-appointed attorney be withdrawn and he specifically requested that the trial court appoint attorney Athena Nyers, who was representing him in a similar criminal case in Allen County at the time. The trial court granted Roby's request and Ms. Nyers was appointed to represent Roby. Roby further requested that Ms. Nyers represent him in this appeal, but she declined because she did not practice appellate law. Roby is now claiming that his attorney was ineffective in representing his interests at trial.

**{¶44}** First, Roby claims his counsel failed to object and/or move for a mistrial when the issue of his asserting his Fifth Amendment right to remain silent was raised. This court has previously held that trial counsel's failure to object does

not establish ineffective assistance of counsel. *State v. Turks*, 3d Dist. No. 1-08-44, 2009-Ohio-1837, ¶43, citing *State v. Conway* (2006), 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶103. "Furthermore, trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." Id., citing *State v. McKinney*, 11th Dist. No.2007-T-0004, 2008-Ohio-3256, ¶191.

As noted above in the first assignment of error, we did not find any error or violation of his Fifth Amendment rights in the "fair response" line of questioning. A bench conference was held prior to the State's line of questioning, so his attorney was informed of the basis for eliciting this testimony. There was nothing to object to and no grounds for a mistrial.

{¶45} Next, Roby complains that counsel failed to object to the admission of prior acts of theft when Lieutenant Schweibert was describing the tools found in the white van and explained how "channel locks" could be used for criminal activity. He stated that "[t]hrough my investigation, Mr. Roby had been stealing CBs, CB antennas, things like that; and channel locks are used to quickly unscrew antennas, nuts, bolts, \*\*\*." We find that this testimony would likely have been admissible under Evid.R. 404(B) to help establish plan and knowledge. Furthermore, Roby himself admitted to numerous convictions for other theft offenses when he testified, so Roby cannot demonstrate how this brief mention of information that Roby also provided to the jury was in any way prejudicial.

**{¶46}** Roby also states that his trial counsel was ineffective for failure to object to evidence of convictions that were older than ten years, specifically a 1995 theft conviction and a 1997 burglary conviction. Evid.R. 609(A)(2) states that, in most cases, evidence of a conviction that occurred more than ten years prior is not admissible unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect.

**{¶47}** The references to the two older crimes occurred when Roby was testifying and the State questioned Roby about his prior convictions. This line of questioning was for the purpose of impeaching Roby in response to his denial of any intention to commit a theft inside the semi-truck. Although those two convictions were more than ten years old, the probative value of the State's efforts to impeach Roby's stated intention for being in the van could have outweighed any prejudicial effect. In addition, any prejudicial effect would have been extremely minimal given the fact that Roby also acknowledged convictions for receiving stolen property (2000), another receiving stolen property (2000), receiving stolen property (2003), theft (2004), theft (2005), possession of criminal tools (2006), another possession of criminal tools (2006), and breaking and entering (2006).

**{¶48}** Finally, Roby claims his counsel was ineffective for failing to object to the admission of hearsay statements by Lieutenant Schweibert concerning

statements Steve Balo told him about the money gram. First, as stated above, failure to make objections does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision. See *State v. Gumm*, 73 Ohio St.3d 413, 428, 1995-Ohio-24, 653 N.E.2d 253. And, even without the brief testimony concerning the conversation with Mr. Balo, contrary to Roby's assertion, there was additional evidence that connected Roby to the van, such as his daughter's phone numbers in the cell phone and the names of his relatives on the money gram.

{¶49} We do not find that the actions of counsel complained about by Roby fell below objective standards of reasonable representation. Furthermore, given the totality of the evidence, there was not a reasonable probability that the result of the trial would have been different. Roby's fifth assignment of error is overruled.

{¶50} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**