[Cite as *State v. McDowell*, 2017-Ohio-9249.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

KYLE MCDOWELL,

    DEFENDANT-APPELLANT.

CASE NO. 5-17-01

O P I N I O N

Appeal from Hancock County Common Pleas Court
General Division and Juvenile Division
Trial Court No. 2016-CR-00062

**Judgment Affirmed**

Date of Decision:  December 26, 2017

APPEARANCES:

    *Deborah K. Rump* **for Appellant**

    *Brian S. Deckert and Micah R. Ault* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Kyle McDowell ("McDowell") appeals the judgment of the Juvenile Division of the Hancock County Court of Common Pleas ("Juvenile Division") for relinquishing jurisdiction over his case. He also appeals the judgment of the General Division of the Hancock County Court of Common Pleas ("General Division") for (1) holding that the rape shield statute prohibited the testimony of the victim's prior boyfriend; (2) failing to grant a mistrial after the State elicited testimony that indicated he exercised his Fifth Amendment right to remain silent; and (3) failing to admit extrinsic evidence under Evid.R. 616(A) that showed the victim had a motivation to lie in her testimony. For the reasons set forth below, the judgment of the lower court is affirmed.

*Facts and Procedural History*

{¶2} On October 13, 2014, HB reported that she had been raped by McDowell on October 11, 2014. Trial Tr. 296-298. HB and McDowell had both attended the same high school and had known each other for some time. *Id.* at 413, 417. On the evening of October 11, 2014, McDowell was house sitting for his neighbors and invited HB to come visit with him at his neighbor's house. *Id.* at 744. HB arrived at the house where McDowell was at around 11:40 p.m. and planned to stay for about ten minutes. *Id.* at 421. After being there a short time, HB stated that she intended to leave. *Id.* at 421. HB testified at trial that McDowell would not allow her to leave. *Id.* at 423. She testified that McDowell then forced her into a

bedroom, held her down, and raped her. *Id*. at 423, 424-427. HB said that she left the house and went home immediately after McDowell released her. *Id*. at 427. At the time of this incident, HB was sixteen years old, and McDowell was seventeen years old. *Id*. at 412. Doc. 4. On October 12, 2014, McDowell sent HB a series of text messages. Ex. 36-51. These texts indicated he felt remorse for some unspecified reason and had a desire to speak with HB sometime in the near future. *Id*.

{¶3} On the morning of October 13, 2014, HB told her mother what had happened. Trial Tr. 461. At this point, HB and her mother went to the hospital where HB was examined and evidence was collected. *Id*. at 462, 464-465. The examining nurse determined that HB had bruising on her hands, forearms, and cervix. *Id*. at 566, 569. The nurse interpreted these bruises to be consistent with rough sexual activity. *Id*. at 569, 571. Probable Cause Hearing Tr. 13. On October 31, 2014, the Juvenile Division had a hearing on a civil protection order and, as a result, chose to issue a civil protection order. Doc. 62. Amenability Hearing Tr. 10-11, 21. After a police investigation, a criminal complaint was filed with the Juvenile Division of the Hancock County Court of Common Pleas on June 22, 2015. Doc. 4.

{¶4} However, on September 2, 2015, the State filed a motion that requested the Juvenile Division relinquish jurisdiction over this case and transfer this matter to the General Division. Doc. 4. On September 30, 2015, the Juvenile Division

held a probable cause hearing to examine the facts of this case. Probable Cause Hearing Tr. 1. After it determined that probable cause existed, the Juvenile Division then held an amenability hearing on January 19, 2016. Doc. 4. At both of these hearings, McDowell opposed the motion to relinquish jurisdiction on the grounds that he was amenable to rehabilitation and had complied with the terms of the civil protection order that had been issued by the trial court fifteen months prior to the hearing. Amenability Hearing Tr. 21.

{¶5} On February 3, 2016, the Juvenile Division granted the motion and ordered a discretionary transfer of this case to the General Division. Doc. 4. On March 22, 2016, an indictment was filed with the General Division, charging McDowell with three counts of rape in violation of R.C. 2907.02(A)(2); one count of gross sexual imposition in violation of R.C. 2907.05(A)(1); and one count of kidnapping with a sexual motivation in violation of R.C. 2905.01(A)(4). Doc. 1. On March 30, 2016, McDowell was released on his own recognizance. Doc. 7. The record does not contain evidence that suggests McDowell violated the terms of his release while his case was pending.

{¶6} On August 24, 2016, McDowell submitted the Defense's list of witnesses. Doc. 40. This list included Isaac Burnett ("Isaac"), who had been HB's boyfriend prior to the incident in this case, and Isaac's sister, Olivia Burnett. Doc. 40. On September 1, 2016, the State filed a motion to exclude evidence that would discuss HB's prior sexual history in violation of R.C. 2907.02(D). On

October 13, 2016, the Defense filed a motion that requested a hearing pursuant to 2907.02(E) to determine the admissibility of evidence under the rape shield statute. Doc. 49. On November 7, 2016, the General Division granted the State's motion to exclude the evidence that involved aspects of HB's prior sexual history. Doc. 71.

{¶7} Trial began on November 14, 2016. Doc. 133. At trial, the State called Detective Lyle E. Harvitt ("Harvitt") as a witness during its case-in-chief. Trial Tr. at 669. During his testimony, the following exchange occurred between the prosecutor and Harvitt:

> **Q: Did you ever make any determination to try to find out whether or not Kyle McDowell had any type of injury that could have affected his mobility in 2014?**
>
> **A. I did make an attempt to talk to him but apparently he opted not to.**

*Id*. at 695. At this time, the Defense moved for a mistrial, claiming that this line of questioning violated McDowell's Fifth Amendment rights. *Id.* The trial court overruled the Defense's motion for a mistrial. However, the trial court did issue a curative instruction to the jurors, explaining that they were not to infer guilt or innocence on the basis of whether McDowell chose to remain silent. *Id*. at 696-698.

{¶8} HB also testified during the prosecution's case-in-chief. On cross-examination, the Defense sought to ask questions about HB's relationship with her mother and whether HB feared discipline from her mother for her actions. *Id*. at 515. The State objected to this line of questioning. *Id*. at 515. In response, the

Defense argued that this information was relevant because it demonstrated that HB may have been motivated to blame McDowell for this incident by fear of discipline from her mother. *Id*. at 516-517. The trial court admitted portions of this evidence but sustained several objections made by the prosecution, excluding certain elements of this line of questioning. *Id*. at 521-530. During its case-in-chief, the Defense called a number of witnesses, including Isaac and Isaac's sister. At trial, portions of Isaac's testimony regarding his prior relationship with HB were excluded after the trial court sustained two objections made by the prosecution. *Id*. at 832-835.

{¶9} On November 18, 2016, the jury found McDowell guilty of all counts charged. Doc. 83-88. The trial court sentenced McDowell on December 28, 2016. Doc. 104. McDowell filed his notice of appeal on January 11, 2017. Doc. 122. On appeal, he raises the following four assignments of error:

**First Assignment of Error**

**The Juvenile Division abused its discretion and committed errors of law in granting the state's motion to relinquish jurisdiction. Further, McDowell's right to due process of law both under the Ohio and United States Constitutions was violated. It took the Juvenile Division 16 months to order the transfer and then based the transfer on the premise that there was not enough time in which to successfully complete rehabilitation. The Juvenile Division rejected the Court Diagnostic report that concluded there was sufficient time to rehabilitate him within the Juvenile system. During the pendency of the proceedings, the Juvenile Division did not order counseling as a condition of bond or the CPO. As such, his right to a speedy trial was also violated and caused him great harm in violation of the 6th Amendment of the**

**United States Constitution and Art. I, § 10 of the Ohio Constitution.**

**Second Assignment of Error**

**The trial court erred when it held the Rape Shield law prohibited testimony by the complaining victim's boyfriend that he had rough sex with her less 24 hours before the charged rape and that he was responsible for the bruising on her arm.**

**Third Assignment of Error**

**The trial court erred and abused its discretion when it did not grant a mistrial after the state elicited testimony that McDowell exercised his right to remain silent and would not speak with police.**

**Fourth Assignment of Error**

**The trial court erred because it abused its discretion and failed to properly apply the law by not admitting considerable extrinsic evidence pursuant to Evid.R. 616(A) that the complaining victim had a motive to lie in order to avoid being physically disciplined by her mother.**

For the sake of analytical clarity, we will consider the first and third assignments of error before we consider the second and fourth assignments of error.

*First Assignment of Error*

{¶10} In his first assignment of error, McDowell argues that the juvenile division erred in relinquishing jurisdiction over his case for several reasons. First, he contends that the facts of this case do not support the conclusion that he was not amenable to rehabilitation or was a threat to public safety. As part of this argument, he asserts that the trial court did not engage in proper analysis of the statutory factors

and that the trial court's decision was not, therefore, supported by the record. Second, he alleges that the trial court subjected McDowell to a situation in which he received a cruel punishment that is disproportionate to the crime he allegedly committed and in which McDowell's right to a speedy trial was not honored. In particular, he points to the findings of the trial court regarding his potential for rehabilitation, arguing that he would have had time to complete counseling and be rehabilitated if the trial court had promptly addressed his case. Third, he argues that the trial court misapplied the law in having this case bound over. He argues that this bindover cannot be justified on the grounds of community safety as the facts in the record do not support such a determination. For these reasons, he requests that this Court reverse the trial court's decision to relinquish jurisdiction.

Legal Standard

{¶11} R.C. 2152.10(B) confers a juvenile court with the discretion to transfer a case to facilitate a criminal prosecution under certain circumstances. R.C. 2152.10(B) reads, in its relevant part, as follows:

> **Unless the child is subject to mandatory transfer, if a child is fourteen years of age or older at the time of the act charged and if the child is charged with an act that would be a felony if committed by an adult, the child is eligible for discretionary transfer to the appropriate court for criminal prosecution. In determining whether to transfer the child for criminal prosecution, the juvenile court shall follow the procedures in section 2152.12 of the Revised Code.**

R.C. 2152.10(B). Under R.C. 2152.12(B), A juvenile court has the discretion to transfer a case for criminal prosecution if the court finds that three conditions are met. First, the child must have been fourteen or older at the time of the alleged offense. R.C. 2152.12(B)(1). Second, the juvenile court must determine that probable cause exists to believe that the child committed the alleged offense. R.C. 2152.12(B)(2). Third, the juvenile court must find that "[t]he child is not amenable to care or rehabilitation within the juvenile system" and that "the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(3).

{¶12} In determining whether a child should be transferred from the juvenile system, the court must first examine the factors that, if present, would support transfer. These factors are listed in R.C. 2152.12(D) and read as follows:

**(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.**

**(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.**

**(3) The child's relationship with the victim facilitated the act charged.**

**(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.**

**(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code,**

**and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.**

**(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.**

**(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.**

**(8) The child is emotionally, physically, or psychologically mature enough for the transfer.**

**(9) There is not sufficient time to rehabilitate the child within the juvenile system.**

R.C. 2152.12(D). The court must then consider the factors that weigh against transfer, which are listed in R.C. 2152.12(E) and read as follows:

**(1) The victim induced or facilitated the act charged.**

**(2) The child acted under provocation in allegedly committing the act charged.**

**(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.**

**(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.**

**(5) The child previously has not been adjudicated a delinquent child.**

**(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.**

**(7) The child has a mental illness or intellectual disability.**

**(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.**

R.C. 2152.12(E). If the factors in R.C. 2152.12(D) that indicate transfer is appropriate outweigh the factors in R.C. 2152.12(E) that indicate transfer is inappropriate, the juvenile court may transfer the case. R.C. 2152.21(B)(3). In making this determination, "[t]he record shall indicate the specific factors that were applicable and that the court weighed." R.C. 2152.12(B)(3).

{¶13} In cases of a discretionary transfer, challenges to the trial court's findings regarding the amenability of the child to rehabilitation within the juvenile justice system are reviewed under an abuse of discretion standard. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 39, citing *State v. Golphin*, 81 Ohio St.3d 543, 692 N.E.2d 608 (1998); *State v. Douglas*, 20 Ohio St.3d 34, 36, 485 N.E.2d 711, 712 (1985).

Legal Analysis

{¶14} In this case, the juvenile court determined that a discretionary transfer of McDowell's case from the juvenile system was appropriate. The juvenile court found that the charged offense would have been a felony if the offense had been committed by an adult and that McDowell was seventeen at the time of the alleged offense. Doc. 4. On the basis of these two findings, McDowell's case was eligible

for a discretionary transfer if there was probable cause to believe that McDowell may have committed the charged offense and if McDowell was found not to be amenable to rehabilitation within the juvenile system. Pursuant to R.C. 2152.12(B)(2), the juvenile court held a probable cause hearing on September 30, 2015, in which it determined that probable cause existed to support the belief that McDowell may have committed the charged offense. Doc. 4. Probable Cause Hearing Tr. 4. The juvenile court then proceeded to hold an amenability hearing on January 19, 2016. Amenability Hearing Tr. 4.

{¶15} At the amenability hearing, the juvenile court heard evidence from the State and Defense regarding the factors that are listed in R.C. 2152.12. *Id.* at 20-21. In its judgement entry, the juvenile court considered all of the factors that are listed in R.C. 2152.12(D) and R.C. 2152.12(E). The juvenile court found that several of the statutory factors supported transfer. The juvenile court found that McDowell had committed offenses of violence; that the offense resulted in physical harm to the victim; that a relationship with the victim facilitated the offense; that the report from Dr. Cassel showed that McDowell was mature enough for transfer; and that two and a half years was not sufficient time for McDowell to be rehabilitated in the juvenile system. Doc. 4.

{¶16} The juvenile court then considered the factors that would weigh against transfer. The juvenile court found that McDowell did not have a prior history of delinquent behavior and that McDowell's behavior since the incident on

- 12 -

October 11, 2014, showed that he did not pose a threat to community safety. Doc. 4. However, since the juvenile court determined that two and a half years was not sufficient time for McDowell to be rehabilitated, the juvenile court found that it could not be assured that McDowell was not a threat to community safety after the juvenile court lost jurisdiction over him at the time he turned the age of twenty-one. After considering the factors, the juvenile court determined that a discretionary transfer was appropriate under the facts of this case because the factors in favor of transfer outweighed the factors against transfer.

{¶17} In reaching this conclusion, the juvenile court considered all of the relevant evidence before it and followed the procedures set forth in the Ohio Revised Code. As to this issue, our task is not to exercise our judgment in areas that were entrusted to the discretion of the juvenile court. Our task is to determine whether the juvenile court abused the discretion it was given. After examining the record, we do not find that the Juvenile Division abused its discretion in ordering that McDowell's case should be bound over to the General Division. For these reasons, McDowell's first assignment of error is overruled.

*Third Assignment of Error*

{¶18} In his third assignment of error, McDowell claims that the State improperly elicited testimony at trial that revealed McDowell had exercised his constitutional right to remain silent after he was arrested. He argues that this line of questioning was a deliberate attempt by the prosecution to disclose this information

to the jury. He believes that this line of questioning was prejudicial as his reputation for honesty was an issue at trial. Arguing that his Fifth Amendment rights were subverted by the prosecution in this line of questioning, McDowell made a motion for a mistrial, which the trial court denied. On appeal, he argues that the trial court's determination on this motion should be reversed and that he should be granted a new trial.

Legal Standard

**{¶19}** Under the Fifth Amendment, the accused may not "be compelled in any criminal case to be a witness against himself." U.S. Constitution, Fifth Amendment. "[T]he introduction of the defendant's silence to the authorities during the state's case-in-chief, regardless of whether the *Miranda* warnings were given, is inappropriate in a situation where it is obviously used as nothing but substantive evidence of guilt." *State v. Geboy*, 145 Ohio App.3d 706, 764 N.E.2d 451 (3d Dist.2001).

> **Use of a defendant's silence in the state's case-in-chief puts a defendant in the position of having to choose between allowing a jury to infer guilt from his silence or being forced to take the stand to explain his prior silence, thereby surrendering his right not to testify.**

*State v. Roby*, 3d Dist. Putnam No. 12-09-09, 2010-Ohio-1498, ¶14, citing *State v. Perez*, 3d Dist. Defiance No. 4-03-49, 2004-Ohio-4007. Thus, testimony showing that the accused relied upon his Fifth Amendment privilege and remained silent may not be used as substantive evidence of guilt in the State's case-in-chief. *See State*

*v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 38. *Compare Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.86 (1980); *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982).

{¶20} "Nevertheless, the introduction of evidence regarding a defendant's decision to remain silent does not constitute reversible error if, based on the whole record, the evidence was harmless beyond any reasonable doubt." *Roby* at ¶ 14. The error is harmless if it is clear beyond a reasonable doubt that the defendant would have been found guilty in the absence of the State's reference to the defendant's silence. *State v. Welch*, 3d Dist. Wyandot No. 16-06-02, 2006-Ohio-6684, ¶ 9. "A single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771 (2001). Further, if the trial court issues curative instructions regarding a comment mentioning the silence of the defendant, we presume that the jury adhered to the trial court's instructions. *Id.*

{¶21} Where the defendant has submitted a motion for a new trial in response to an allegedly inappropriate comment regarding his or her Fifth Amendment rights, we consider the provisions of Crim.R. 33. Under Crim.R. 33,

> **(A) A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:**

> **(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;**

Crim.R. 33(A)(1). "Mistrials are necessary 'only when the ends of justice so require and a fair trial is no longer possible.'" *Welch* at ¶ 9, quoting *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 131. "[A] mistrial should not be ordered merely because some error or irregularity had intervened." *State v. Carter*, 3d Dist. Allen No. 1-15-62, 2017-Ohio-1233, ¶ 71.

**{¶22}** The decision regarding whether to declare a mistrial is left within the discretion of the trial court. *State v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900 (1988). Thus, on appeal, a trial court's decision not to declare a mistrial will not be reversed absent an abuse of discretion. *Treesh, supra*, at 480. "An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *Howton, supra*, at ¶ 23, quoting *Heilman, supra*, at ¶ 14. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *Thompson, supra*, at ¶ 11, quoting *In re Jane Doe 1* at 138.

Legal Analysis

**{¶23}** During the course of this case, the Defense alleged at various points that McDowell had suffered an injury to his right knee prior to the alleged incident and that this injury would have interfered with his ability to undertake the actions

alleged by the victim. As part of its case-in-chief, the prosecution questioned Detective Harvitt to see if he had come across information that would substantiate these claims in the course of his investigation. During this line of questioning, the following colloquy occurred between the prosecutor and Harvitt:

> **Q: Did you ever make any determination to try to find out whether or not Kyle McDowell had any type of injury that could have affected his mobility in 2014?**
>
> **A. I did make an attempt to talk to him but apparently he opted not to.**

Trial Tr. 605. The context of this colloquy establishes that the prosecutor was inquiring into whether Harvitt had an injury that could have affected his mobility. The content of the transcript does not suggest that the prosecutor was attempting to elicit whether McDowell asserted his Fifth Amendment right to remain silent.

{¶24} The text of the transcript does not indicate that the officer was attempting to provide evidence of McDowell's guilt in offering this statement. The officer merely stated that he did not have the opportunity to confirm whether McDowell had an injury through direct contact with McDowell. If making this statement was error, it was harmless as the officer does not appear to be suggesting in any way that the jurors should infer guilt from McDowell's silence. Further, McDowell does not explain how he would have been found innocent in the absence of this comment. We also note that the trial court issued curative instructions at the request of the Defense, stating:

> **Ladies and gentlemen of the jury, there have been a couple of questions and answers here about the Detective's chatting or not chatting with the defendant, Kyle McDowell. You're specifically instructed that under the United States Constitution, under the Ohio Constitution, a person who is charged or a suspect in a criminal investigation has an absolute constitutional right not to speak with someone if they don't want to do that.**

*Id.* at 698. Since we are to presume that the jurors followed these instructions, we find that these comments did not affect the outcome of the case. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 54, citing *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 147.

{¶25} Given this context, we do not find evidence in the record that suggests that the trial court's decision to deny the Defense's motion for a new trial was an abuse of discretion. The transcript shows that the trial court heard the Defense's objections, considered the statements, and issued a curative instruction to address any confusion on the part of the jurors. The defendant, on the other hand, has not carried the burden of showing that he was denied a fair trial by these comments and has not showed that he would have been acquitted in the absence of this statement. For these reasons, his third assignment of error is overruled.

*Second Assignment of Error*

{¶26} In his second assignment of error, McDowell argues that the trial court erred in prohibiting evidence that suggested the bruising of the victim's body may have come from the victim having sexual intercourse with her boyfriend one day prior to the incident with McDowell that is the subject of this case. Prior to trial,

the trial court granted the State's motion in limine on the grounds that admission of evidence regarding HB's prior sexual history would be in conflict with Ohio's rape shield statute. McDowell alleges that he sought to have this testimony introduced to show he may not have caused the bruising on the HB's body and did not want this testimony introduced to demonstrate that HB was promiscuous. Thus, McDowell argues that the rape shield did not apply to this evidence; that the trial court erred by not allowing the evidence to be admitted at trial; and that exclusion of this evidence violated his constitutional right of confrontation as guaranteed by the Sixth Amendment of the U.S. Constitution. On the basis of these arguments, he requests that this court reverse his convictions and order a new trial.

## Legal Standard

**{¶27}** Extrinsic evidence is introduced to impeach a witness by means other than cross-examination of that witness. Black's Law Dictionary (10th Ed.2014). *See State v. Garcia*, 8th Dist. Cuyahoga No. 102546, 2016-Ohio-585, ¶ 108, quoting Staff Notes to Evid.R. 616 ("In the impeachment context, extrinsic evidence means evidence introduced through the testimony of other witnesses.") Under Evid.R. 616(A), "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness by examination of the witness or by extrinsic evidence."

> **While courts have broad discretion in restricting the presentation of evidence, potential bias or interest on the part of a witness as to disputed evidence is always considered highly relevant, and courts must be reluctant to restrict the trier of fact's consideration of such testimony; if such testimony is excluded,**

> **and it is *vital* to either the state's case or to the defense, the trial court has abused its discretion and reversible error has occurred.**

(Emphasis added). *State v. Moore*, 3d Dist. Union No. 14-2000-39, 2001 WL 218431, 2 (March 6, 2001), citing *Ferguson, supra*, at 165-166.

{¶28} "Evidence which is not relevant is not admissible." Evid.R. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, even if evidence is relevant, it may not be admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

> **The mere fact that testimony is logically relevant does not in all cases make it admissible. It must also be legally relevant. A fact which in connection with other facts renders probable the existence of a fact in issue may still be rejected, if in the opinion of the judge and under the circumstances of the case it is considered essentially misleading or too remote.**

*Whiteman v. State*, 119 Ohio St. 285, 289, 146 N.E. 51, 52 (1928). Further, "'[l]aying foundation' is a prerequisite to the admission of evidence at trial." *State v. Brooks*, 3d Dist. Marion No. 9-99-40, 1999 WL 1076135 *5 (Dec. 1, 1999). "Foundation consists of preliminary questions to a witness to establish admissibility of evidence." *Id*. "By establishing that a piece of evidence is relevant to the case at hand or the issue in question then the proper foundation has been laid." *Id*.

**{¶29}** "The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion." *Cassens Transport Co. v. Bohl*, 3d Dist. Seneca No. 13-11-36, 2012-Ohio-2248, ¶35, quoting *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299, 587 N.E.2d 290 (1992). "An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *Howton, supra*, at ¶ 23, quoting *Heilman, supra*, at ¶ 14. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *Thompson, supra*, at ¶ 11, quoting *In re Jane Doe 1, supra*, at 138.

Legal Analysis

**{¶30}** In this case, the State submitted a motion to exclude evidence of HB's prior sexual activity pursuant to Ohio's rape shield statute. Doc. 42. *See* R.C. 2907.02(D), (E). The trial court granted the State's motion in limine. Doc. 71.

> **A motion in limine is commonly used as a tentative, precautionary request to limit inquiry into a specific area until its admissibility is determined during trial. As a tentative, interlocutory, precautionary ruling, '* * * finality does not attach when the motion is granted.' 'By its very nature, * * * its grant cannot be error. It is not a ruling on evidence.' * * * As such, '* * * the ruling [o]n a motion in limine does not preserve the record on appeal[;] * * * [a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by [a timely objection] * * * when the issue is actually reached [during the] * * * trial.'**

(Citations omitted). *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, at ¶ 35. In this case, the motion in limine was granted in consideration of Ohio's rape shield statute. Doc. 71. However, the record shows that this evidence was not excluded at trial pursuant to Ohio's rape shield statute. Trial Tr. 834.

{¶31} At trial, defense counsel began to broach the subject of HB's prior sexual activity while Isaac was testifying as a witness. *Id*. at 834. This exchange between defense counsel and Isaac at trial proceeded as follows:

> **[Defense:] Okay. And what period of time do you recall dating [HB]?**
>
> **[Isaac:] I'd say it started in November, 2013, and it continued till May, and then it started again in September until, or it started again in October and November so only like a month or two on the second time.**
>
> **[Defense:] All right. And during the time that you and she [HB] were together, did you *ever* do *any* activities that caused her to be bruised?**
>
> **[Prosecution:] Objection, Your Honor.**
>
> **The Court: Sustained.**
>
> **[Defense:] Did you *ever* receive *any* texts from [HB's] mom about seeing [HB]?**
>
> **[Prosecution:] Objection, Your Honor.**
>
> **The Court: I'm going to sustain until we get a foundation.**
>
> **[Defense:] Well, that's the foundation now to find out.**

**The Court: I understand, but the objection went to, as I took it to be to the form of the question, and to the content of the question. So I'm going to object as to the form and tell you contents okay, at least at this point.**

(Emphasis added.) *Id*. at 833-834. During this exchange, defense counsel asked two questions: one was about bruising, and the other was about text messages.

{¶32} Both of these questions were extremely broad in their scope. In framing both of these questions, the Defense failed to limit the scope of the inquiry to a relevant timeframe, asking Isaac two questions that began with the phrase "did you *ever* * * *." (Emphasis added.) *Id*. at 833-834. These questions potentially have within their scope every moment of Isaac's life. *Id*. at 833-834. Similarly, in the first question—regarding bruises—the Defense asked whether Isaac performed "*any* activities" that led to HB being bruised. (Emphasis added.) *Id*. at 833. The call of this question could potentially raise any number of collateral matters. For these reasons, the relevance of this line of inquiry was not apparent from the Defense's questions as a foundation to introduce this evidence was not laid. *Brooks, supra*, at 5. Admission of this evidence required the Defense, by laying a proper foundation, to establish some connection between Isaac's forthcoming testimony and the facts of the case before the trial court. *Id*.

{¶33} The statement of the trial judge after sustaining these two objections further confirms the conclusion that Isaac's testimony was not excluded pursuant to the rape shield statute. While the trial judge made this statement after he sustained

- 23 -

an objection to the second question in this exchange—which addressed the text messages Isaac received from HB's mother—the form of this question was identical to the preceding question about bruising. The trial judge understood the State to be objecting to the "form of the question" and stated that the testimony at issue was not going to be admitted until a proper foundation was laid. Thus, the trial court excluded this evidence while giving the Defense the opportunity to reframe the question and lay a proper foundation for Isaac's testimony.

{¶34} In the absence of a proper foundation, the evidence at issue was not established as legally relevant. *Brooks, supra*, at 5. Further, this evidence was not excluded pursuant to the rape shield statute. Rather, the record shows that this evidence was excluded for lack of a proper foundation. After reviewing the record, we find that the trial court did not abuse its discretion in excluding this evidence at trial. For this reason, McDowell's second assignment of error is overruled.

*Fourth Assignment of Error*

{¶35} In his fourth assignment of error, McDowell argues that the trial court abused its discretion in refusing to admit evidence that showed the alleged victim had a motive to make misrepresentations in her testimony. He argues that this evidence should have been admitted under Evid.R. 616(A) as extrinsic evidence of bias, prejudice, interest, or a motive to misrepresent. He further argues that the trial court does not have the discretion under Evid.R. 403(B) to deny admission of this

evidence. For these reasons, he requests this Court to reverse his convictions and remand this case to the trial court for further proceedings.

## Legal Standard

**{¶36}** This assignment of error addresses the admission of extrinsic evidence and is, therefore, governed by the same standard as the second assignment of error. For this reason, we reincorporate the legal standard set forth under the second assignment of error here.

## Legal Analysis

**{¶37}** In this case, the Defense, in the midst of cross-examination, began questioning HB about whether her mother abused or disciplined her. Trial Tr. at 522. The prosecution objected on the grounds that this information was not relevant. *Id*. at 515-516. At a sidebar, the trial court voiced its concern about the relevance of this information, saying, "The first thing that we need to be concerned about is relevance, so we need to somehow hone into a period reasonably close to October 10, 11, 12, 13, 14, somewhere in there." *Id*. at 516. In response, the Defense argued that this information showed that HB had a motive to lie as she may have been afraid of being disciplined by her mother for being out past her curfew on the night of the alleged incident. *Id*. at 516-517.

**{¶38}** The State, on the other hand, argued that this information was irrelevant since HB went home on the night of the incident and did not tell her mother about the alleged incident until two days later. The State reasoned that, if

HB had fabricated the story to get out of being disciplined by her mother, she would have provided the rape as an excuse upon getting in trouble instead of volunteering this information to her mother. In response, the following exchange took place between defense counsel and the trial judge:

> **Defense Counsel: It doesn't matter, Judge, whether or not she got disciplined that night.**
>
> **The Court: I'm not saying that it did. I'm saying you just can't right out of the clear blue say isn't it a fact your mother abused you, isn't it a fact your mother disciplined you. I'm assuming if this was a normal household, sometime between the age of 0 and 16 or 17, this kid got disciplined.**
>
> **\* \* \***
>
> **The Court: I'll let you make some limited inquiry here, but it can't be isn't it a fact your mom abused you. I mean, ask her what time she got home, ask her if she was beyond curfew, ask her if there was a consequence. Ask her those kinds of questions to get some foundation to get us over this relevancy hump, in the context of did your mom ever abuse you. I—I—I can't rule on it until I hear it.**

*Id.* at 519-520. The trial court then allowed the Defense the opportunity to proffer this evidence by demonstrating the relevance of this information to the case before the court. *Id.* at 521-522.

**{¶39}** Subsequently, the trial court did allow portions of this line of questioning over the objections of the prosecution. However, defense counsel did not ask about HB's curfew, the consequences of violating this curfew, or any other questions that might connect the disciplinary practices of HB's mother to McDowell's defense. In spite of the fact that the trial court explained to defense

counsel exactly what had to be done for this evidence to be admitted, the defense counsel proceeded to present these disciplinary matters on cross-examination as though they were collateral issues. Consequently, the trial court treated the issue of HB's discipline as a collateral issue, found this evidence—as proffered—to be of limited relevance, and accordingly excluded portions of this testimony. The transcripts show that the trial court had a rationale for these rulings and acted in accordance with its rationale. As to the cross examination of HB on these issues, we do not find evidence in the record that the trial court abused its discretion in excluding portions of this testimony during HB's cross examination.

{¶40} During its case-in-chief, the Defense also attempted to introduce extrinsic evidence that suggested that HB was motivated to fabricate rape allegations out of fear of her mother's discipline. The Defense sought to introduce this extrinsic evidence through HB's close friend, Aaliyah Comstock ("Aaliyah"), and Aaliyah's father, Andrew Comstock ("Andrew"). At one point during a sidebar, the Defense stated its intention to introduce evidence that indicated HB had used marijuana on the day of the alleged incident through Aaliyah, saying,

> **If I can go back to the witness before, I would proffer that I was going to ask her questions, did [HB] say anything about her activities on October 11, 2014. The response would be yes. The next question, what did she say; that she was on weed and was high and was afraid to go home for fear of being punished.**

*Id*. at 825-826. The Defense did not explain how this information shed light on whether HB consented to the sexual encounter that she had with McDowell. The

Defense also did not explain how being fearful of her mother's discipline over smoking marijuana would have led HB to volunteer fabricated rape allegations to her mother two days after the incident with McDowell.

{¶41} The Defense also wanted to introduce evidence that indicated that HB feared her mother's discipline through Andrew. Specifically, the Defense intended to have Andrew testify that HB had asked him if she could move in with the Comstock family as a means to escape her mother's discipline. This alleged conversation, however, occurred at least four years prior to the trial when HB was still in elementary school or in junior high. *Id*. at 825. The prosecution objected to introduction of this testimony, challenging the relevance of this evidence. *Id*. at 826. In response, the Defense issued three main arguments at trial. Defense counsel argued that this prior incident could shed light on HB's fears and motivation around the time of the incident. *Id*. at 827. The Defense also argued that this was not a collateral matter, claiming that this evidence went directly to the issue of consent. *Id*. at 827. Finally, the Defense argued that this showed bias or motivation to misrepresent the truth and was, therefore, admissible evidence to use for the purpose of impeachment. *Id*. at 827.

{¶42} After hearing the arguments of the Defense, the trial court determined that this alleged conversation between HB and Andrew was too remote from the circumstances of this case to be relevant. *Id*. at 831. Defense counsel also did not demonstrate how this particular conversation, which occurred prior to 2012, was not

a collateral matter. After reviewing the record, we do not find evidence that the trial court abused its discretion in excluding this evidence. The trial court reasonably determined that this evidence was too remote to be relevant and that defense counsel did not establish a foundation that connected this four-year-old conversation to the facts at issue in this specific case. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 37, citing *Whiteman v. State*, 119 Ohio St. 285, 298, 164 N.E. 51 (1928) (holding "it is the trial court's province to determine whether, under the circumstances, testimony is 'essentially misleading or too remote' to be deemed relevant."). Further, the trial court acted consistently with its stated rationale in excluding this evidence. For these reasons, McDowell's fourth assignment of error is overruled.

## Conclusion

**{¶43}** Having found no error prejudicial to the appellant in the particulars assigned and argued the judgment of the Hancock County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/hls**