[Cite as *State v. Corey*, 2022-Ohio-4568.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>Plaintiff-Appellee,<br><br>- vs -<br><br>STEPHEN A. COREY,<br><br>Defendant-Appellant. | **CASE NO. 2021-G-0029**<br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2020 C 000125 |

**O P I N I O N**

Decided: December 19, 2022
Judgment: Affirmed

*James R. Flaiz*, Geauga County Prosecutor, and *Nicholas A. Burling*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, 3rd Floor, Chardon, OH 44024 (For Plaintiff-Appellee).

*Wesley A. Johnston*, 203 North Broadway Street, Medina, OH 44256 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Stephen Corey, appeals his convictions from the Geauga County Court of Common Pleas. Appellant was convicted of one count of attempted murder, in violation of R.C. 2903.02(A) and R.C. 2923.02(A), one count of felonious assault, in violation of R.C. 2903.11(A)(1), one count of felonious assault, in violation of R.C. 2903.11(A)(2), and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1). Appellant was found not guilty of one count of attempted aggravated murder in violation of R.C. 2903.01(A).

{¶2} Appellant assigns six errors asserting: (1) that the signed verdict forms did not list the level of the offense or aggravating factors of the crime; (2) that the State engaged in prosecutorial misconduct; (3) that trial counsel rendered ineffective assistance; (4) that the trial court erred by admitting non-relevant, misleading evidence to be admitted; (5) that the trial court erred in sentencing appellant by considering prior dismissed criminal cases in determining his sentence; and (6) that appellant's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶3} After review of the record and the applicable caselaw, we find appellant's assignments of error are without merit. Appellant was indicted on and convicted for offenses with only one possible offense level and no aggravating factors. The State appropriately cross-examined appellant about his invocation of the right to remain silent after appellant invited the inquiry, the State did not present inappropriate character evidence, and did not mischaracterize appellant's conduct during closing arguments. Appellant's counsel did not render ineffective assistance of counsel and the trial court did not admit misleading evidence. The trial court did not err by considering prior dismissed cases against appellant in sentencing him. Finally, appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Appellant requested and received a self-defense jury instruction, and the jury did not lose its way in finding that the State proved its case beyond a reasonable doubt.

{¶4} Therefore, we affirm the judgment of the Geauga County Court of Common Pleas.

Case No. 2021-G-0029

**Substantive and Procedural History**

{¶5} On July 18, 2020, appellant and some of his friends were at the Chardon Tavern. Around 2:00 a.m., there was an altercation on the patio of the bar not involving appellant. A waitress saw this confrontation and entered the bar to enlist the aid of Matthew Burns. Burns was a regular patron at the bar who would occasionally help calm tense situations down due to his size. Burns came out to the patio to calm the situation. The fight broke up and Burns told people to calm down and go home.

{¶6} Witnesses stated that appellant left the patio after the altercation. One witness testified that when he left the patio, he yelled back to two of the patrons "you two, down here right now, and finish this." Appellant testified that he had brought his firearm into the bar and that he had been drinking. He admitted it was a mistake to bring a firearm into the bar while he was drinking. However, based on the testimony of at least one witness, the State asserted that appellant returned to his car, retrieved his gun, and reapproached the patio.

{¶7} Although largely in agreement, witness testimony at trial differed as to the particulars of what happened next. Most witnesses were located on the patio behind the bar while Burns and Appellant were in the parking lot. One witness observed the event from the inside of her car in the parking lot.

{¶8} Burns testified to the following: after breaking up the altercation, he saw appellant in the parking lot returning to the patio. Burns recalled seeing appellant on the patio and told him he needed to go home because he was outside when the altercation took place; however, Burns did not testify that appellant had been involved in the altercation itself. Burns testified that appellant wanted to pay his tab, but Burns told him

3

to come back the next day and to just go home for now. Burns said that appellant began to walk back to his car and Burns followed him for a distance. Burns said he turned around when he believed appellant was leaving. After Burns had turned back toward the bar, he heard a "pop" and smelled gunpowder. He turned toward appellant and saw him removing a gun from a holster. Burns said he was about five feet away from appellant and that he tried to get appellant's gun away from him. Burns felt he was too far away from the bar to run back to the patio and instead approached appellant to try to obtain the gun. Burns denied having a knife, or any other object, in his hands.

{¶9}    Appellant's testimony painted a different picture. He testified that as he was walking toward his car to leave, Burns was following him saying "I'm going to f****** kill you." Appellant said that he drew his pistol, which had a flashlight attachment and attempted to turn the light on. Appellant said that Burns drew a pocketknife. Appellant stated that he fired a warning shot into the ground and that Burns continued to close the distance between them and he continued to fire. He stated that he fired the first shot while Burns was 25 feet away and that Burns was approximately six feet away when he fired subsequent shots.

{¶10}  Evidence from the scene revealed that appellant fired twelve shots. He struck Burns four times – in the collar bone, the knee, the calf, and his pinkie toe. Some witnesses testified that appellant continued to fire after Burns collapsed on the ground. No witness, other than appellant, testified that Burns had a knife in his hands or that he was threatening appellant.

{¶11}  Appellant then left the scene alone in his vehicle and called 911. On the call, he said that he left because he and his friends had been threatened. However,

4

appellant did not indicate that he had fired a gun or that he had shot anyone. During the call, appellant exited his vehicle. He told the 911 operator that he had vomited.

{¶12} In fact, he had hidden his loaded firearm under a dumpster of an apartment complex. The location of the dumpster was in an area near a playground and picnic table. Investigators were able to locate the gun by searching the area appellant claimed to be while he was on the 911 call at the time when he said he vomited. Officers did not find any traces of vomit in the area.

{¶13} While on the 911 call, appellant pulled into a local bank parking lot. Officers came to his location, and he was taken into custody that night. While handcuffing appellant, one officer asked him where the gun was. Appellant responded that the gun was safe. He denied that the gun was on the side of the road, only saying that it was in a safe location. He then invoked his right to remain silent and asked to speak to an attorney. He was Mirandized at the time of his arrest.

{¶14} Appellant was indicted on one count of attempted aggravated murder, one count of attempted murder, two counts of felonious assault, and one count of tampering with evidence. Appellant pled not guilty and the matter proceeded to a jury trial. The jury found appellant not guilty of attempted aggravated murder, and guilty on the remaining counts.

{¶15} At sentencing, the trial court merged the felonious assault counts with the attempted murder count and sentenced appellant to a definite prison term of 10 years with a five-year indefinite sentence pursuant to R.C. 2967.271. The court also imposed a mandatory consecutive three-year prison term for the firearm specification to the attempted murder count. Finally, the court imposed a 30-month prison sentence for the

5

tampering with evidence charge which the court ordered to run consecutive for a total prison sentence of fifteen-and-one-half to twenty-and-one-half years.

{¶16} Appellant timely appealed and raises six assignments of error.

**Assignments of Error and Analysis**

{¶17} Appellant's first assignment of error states:

{¶18} "[1.] THE TRIAL COURT ERRORED [sic] WHEN IT FOUND COREY GUILTY OF THE ATTEMPTED MURDER, TWO COUNTS OF FELONIOUS ASSAULT, AND ONE COUNT OF TAMPERING WITH EVIDENCE THE JURY FOUND FIREARM SPECIFICATIONS FOR ATTEMPTED MURDER AND TWO COUNTS OF FELONIOUS ASSAULT WHEN THE VERDICT FORMS DID NOT LIST THE LEVEL OF THE CRIME OR AGGRAVATING FACTORS."

{¶19} In this assignment of error, appellant argues that the signed verdict forms failed to identify the felony level or indicate aggravating elements for appellant's convictions.

{¶20} R.C. 2945.75(A) states:

When the presence of one or more additional elements makes an offense one of more serious degree * * * (2) a guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. **Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged**. (Bold added).

{¶21} Appellant was convicted of one count of attempted murder in violation R.C. 2903.02(A) and R.C. 2923.02(A) and one count of tampering with evidence in violation of R.C. 2921.12(A)(1).

{¶22} R.C. 2923.02(E)(1) provides that "[a]n attempt to committed aggravated murder, murder or an offense for which the maximum penalty is imprisonment for life is a

6

felony of the first degree." Therefore, pursuant to R.C. 2945.75(A), the least degree of the offense of attempted murder is a first-degree felony. There are no other possible offense levels for a conviction of attempted murder. Further, appellant was not convicted of an offense with aggravating elements. Therefore, the lack of felony level on the verdict form cannot result in a conviction of a lesser or greater degree. Similarly, the least (and only) degree of tampering with evidence in violation of R.C. 2921.12(A)(1) is a third-degree felony.

{¶23} The lack of the offense level on the verdict form for both verdict forms is immaterial as appellant was already convicted of the least degree of each offense.

{¶24} Accordingly, appellant's first assignment of error is without merit.

{¶25} Appellant's second assignment of error states:

{¶26} "[2.] THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT, THAT INFRINGED UPON COREY'S CONSTITUTIONAL RIGHTS AND DEPRIVED COREY OF A FAIR TRIAL."

{¶27} In this assignment of error, appellant argues that the State engaged in prosecutorial misconduct in four ways during trial. First, he argues that the State asked improper questions about his invocation of his Fifth Amendment rights during cross-examination. Second, he believes that the State raised improper character evidence about appellant's ownership of firearms. Third, he contends the State made statements during closing arguments that appellant "runs, hides, and lies," which were not supported by the evidence. Finally, he argues the State misled the jury during closing arguments by acting out appellant's firing position in a way not supported by the evidence. We address each claim in turn.

7

Case No. 2021-G-0029

**State's Fifth Amendment Cross-examination Questions:**

{¶28} Appellant argues that the State improperly commented on his invocation of his right to remain silent at the time of his arrest during cross-examination. At trial, the State questioned appellant as follows:

> Q    Okay. Now you testified before that you didn't tell Officer Elam where the gun was because you wanted an attorney; is that correct?
>
> A    I don't believe those were my exact words.
>
> Q    Okay. Well, why didn't you tell Officer Elam where the gun was?
>
> A    Are you asking me if I invoked my Fifth Amendment right to remail silent until present with an attorney?
>
> THE COURT: And I'm going to instruct you to answer the question, please.
>
> A    Could you please restate the question?
>
> Q    Why didn't you tell Officer Elam where the gun was?
>
> A    I invoked my Fifth Amendment right to remain silent until I had my attorney present.

{¶29} Previously, on direct examination, appellant's counsel asked appellant:

> Q    Why didn't you tell Officer Elam where the gun was when he asked you?
>
> A    So when Officer Elam asked me where the firearm was, he had already stated that he had seen everything on video, and they he knew what I did. To me, this didn't sound like anything I should now be talking about without the presence of my attorney.

{¶30} Ordinarily, "the use of pre-arrest silence as substantive evidence of guilt is an impermissible burden upon the exercise of the Fifth Amendment privilege." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 28. Such evidence

8

"violates the Due Process Clause of both the state and federal constitutions." *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, the Constitution does not prohibit references to a defendant's invocation of the right to remain silent as a "fair response" to a defendant's claims. *United States v. Robinson*, 485 U.S. 25, 32-34, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988). A fair response is warranted in such circumstances because "the protective shield of the Fifth amendment" should not become "a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case." *Id.*, quoting *United States v. Hasting,* 461 U.S. 499, 515, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (STEVENS, J., concurring).

**{¶31}** The "fair response" in *Robinson* involved the prosecutor making closing argument remarks about the defendant's silence in response to claims by defense counsel that the government had not allowed the defendant to explain his side of the story before or during trial. *Id.* At 25.

**{¶32}** In *State v. Thompson*, 10th Dist. Franklin No. 08AP-956, 2009-Ohio-3552, the court held that a "fair response" included a detective's testimony about the defendant's silence "in response to defense counsel's question which specifically asked the detective whether he had talked to appellant at the scene or at the detective bureau." *Id.* At ¶ 21.

**{¶33}** In addition, the *Thompson* court observed longstanding precedent that "a prosecutor may question a defendant about post-arrest [and post-Miranda] silence without a *Doyle* [*v. Ohio*, 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240 (1976)] violation if the defendant has raised the issue on direct examination." *Id.*, citing *State v. Reed*, 10th Dist. Franklin No. 08AP-20, 2008-Ohio-6082, ¶ 21.

Case No. 2021-G-0029

{¶34}  In *Commonwealth v. DiNicola*, 581 Pa. 550, 866 A.2d 329, the Pennsylvania Supreme Court found the State offered "fair response" where defense counsel questioned the government's preparation of the case and lack of pursuit of exculpatory evidence. *Id.* At 562. The court said the State was warranted in referencing the defendant's post-arrest silence to explain why its investigation into exculpatory material was limited. *Id.*

{¶35}  In *State v. Ferguson*, 10th Dist. Franklin No. 07AP-999, 2008-Ohio-6677, relying on *DiNocola* and *Robinson*, the Tenth District found redirect examination questions about the defendant's invocation of his right to remain silent were a "fair response" after defense counsel asked an officer about whether he had talked to the defendant and found him coherent while explaining his rights to him.  *Id.* At ¶ 51.

{¶36}  In *State v. Roby*, 3rd Dist. Putnam No. 12-09-09, 2010-Ohio-1498, the court concluded that the defense had "opened the door to the topic of Roby's post-arrest silence." *Id.* at ¶ 16. Therefore, the State's "fair response" was to clarify questions "that implied that the officers had failed to question Roby and thoroughly investigate the matter." *Id.* at ¶ 18.

{¶37}  In this case, appellant first referenced his invocation of the right to remain silent in his direct examination testimony. The State presented testimony in its case in chief indicating that appellant had hidden the firearm, told officers that it was "somewhere safe," and had not disclosed its location. Appellant's direct examination testimony was used as both a sword and shield. It was used as a sword because it contradicted the State's witnesses' testimony about statements appellant may have made at the time of his arrest. It was used as a shield because it relied on the invocation of constitutional

10

rights in its attempt to answer why appellant did not tell officers where he had hidden the gun.

**{¶38}** Appellant's direct examination testimony warranted a "fair response" from the State. The questions the State asked appellant on cross-examination were seeking to clarify his prior direct examination testimony about the reason he did not reveal the location of the weapon. Appellant's direct examination testimony involved a compound answer with multiple motivations. The State pressed into those motivations, appellant ultimately answered, and the State moved on to the next issue. The State did not inappropriately question appellant about the invocation of his right to remain silent because appellant's direct examination testimony elicited the questions as a fair response. *See Roby*, 2010-Ohio-1498, at ¶ 21.

**State's Firearm Ownership Questions:**

**{¶39}** Appellant contends the State used improper character evidence during appellant's cross-examination by asking if appellant owned multiple handguns. He argues that these questions improperly insinuated that he is a violent person with a proclivity to use firearms and that questions about his gun ownership were not relevant.

**{¶40}** Evid.R. 401 states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶41}** Evid.R. 404 governs the admissibility of character evidence. Evid.R. 404(A) provides that

> [e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions: **(1) Character of accused.** Evidence of a

11

pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *.

Evid. R. 404(B) prohibits the use of "other acts" evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

{¶42} Generally, "'[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Long*, 2014-Ohio-4416, 19 N.E.3d 981, ¶ 20 (11th Dist.), quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. "The term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089 [2009 WL 1177050], ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 [148 N.E. 362] (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, 2014 WL 2881994, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67.

{¶43} Here, appellant testified on direct examination at length about his skill and proficiency with firearms. He testified about the first gun he bought when he was 18 years old, when he obtained his CCW permit, training that he has completed, his participation

12

and aptitude in competitive target shooting, his familiarity with defensive firearm best practices, and that he routinely carries his weapon "24/7 provided, you know, I'm doing something that permits it."

{¶44} On cross-examination, the State asked: "You talked about buying a rifle when you were 18. Do you own any other handguns?" Appellant's counsel objected to the relevance of the question, but the trial court overruled his objection on the basis that appellant invited the inquiry through his own testimony. The State asked specifically about what other handguns appellant owned at the time of the incident. Appellant said that he owned:

> two Ruger target pistols, three or four Glocks, mostly 17's. Actually I believe all 17's. A Smith and Wesson 640; a Smith and Wesson Model 19; a Smith and Wesson Model 65; a Smith and Wesson Model 10; two Smith and Wesson Model 28's: I believe two Beretta small either 22 or 25 caliber pistols; I had two Styre Pistoles, an M9A1, and an L91A; a CZ75NB; a Desert Eagle Mark VII; and I don't believe I have missed any there, but I may have.

{¶45} The State followed up by asking which of these weapons appellant would carry concealed. He answered "[a]lmost exclusively, the Glock 17" with the flashlight attachment which was the weapon he carried on July 18. The State asked a final question about whether any of appellant's guns would be more compact for carrying. He answered in the affirmative and the State moved on.

{¶46} Appellant's testimony about his knowledge and aptitude with firearms was relevant to his self-defense claim. Appellant had freedom to develop his aptitude and familiarity with firearms on direct examination. In turn, the State asked relevant follow-up questions about appellant's handgun ownership and concealed carry practices. The testimony the State elicited about appellant's handgun ownership was not improper

13

Case No. 2021-G-0029

because it was not elicited for the purpose of proving that appellant "acted in conformity therewith on a particular occasion" (Evid.R. 404(A)) or to prove that "on a particular occasion the person acted in accordance with the character." Evid.R. 404(B). The State did not engage in improper questioning and the trial court did not abuse its discretion in allowing the State to cross-examine appellant on his handgun ownership and which firearms appellant would carry concealed.

**State's Closing Argument Statements:**

{¶47} Appellant next takes issue with the State's closing arguments where the prosecutor said that appellant "runs, hides, and lies" on the basis that these statements were not supported by the record. "Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence." *State v. Smith,* 80 Ohio St.3d 89, 111, 684 N.E.2d 668 (1997).

{¶48} During closing arguments, the prosecutor said,

> He runs. He hides. He lies. That's what he does after he shoots Matt Burns. Runs, hides, and lies. Runs from the scene even though he testified Matt's on the ground and nobody was aggressive. Being aggressive. He runs. He hides the gun. Listen to the 911 call. He doesn't give up any information to that dispatcher. She asks him stuff and he * * * doesn't give up any information until after he hides the gun because he doesn't want it found. And then he tells police, well, it's in a safe place. No it's not. You heard this, you know, ridiculous statement, well depending on the circumstances, next to, you know, picnic tables and near a playground, a loaded gun, leaving it there, that may, under certain circumstances, be a safe place. Now come on.

{¶49} Trial counsel did not object to this characterization of the evidence and appellant has waived all but plain error on review of this question. *State v. Wogenstahl,* 75 Ohio St.3d 344, 356-357, 662 N.E.2d 311 (1996). The standard of review for plain

14

Case No. 2021-G-0029

error is the same deferential standard applied for "reviewing ineffective assistance of counsel claims." *State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642, 873 N.E.2d 306, ¶ 17. "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. Appellant bears the burden of demonstrating plain error by proving that the outcome would have been different absent the plain error. *Payne*, at ¶ 17.

{¶50} Further, even when the error is obvious, "it must have affected substantial rights," meaning "'that the trial court's error must have affected the outcome of the trial.'" *Id.,* quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Indeed, "even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it * * *." *Id.* at ¶ 23. Courts are cautioned "to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes,* at 27, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶51} Here, the State said that appellant ran after shooting Burns, hid the firearm, and was deceptive about his actions and what he did with the firearm. The State's comments during closing arguments were supported by the record and reasonable inferences therefrom. Indeed, the State explained those reasonable inferences to the jury to support the claim that appellant "runs, hides, and lies."

15

Case No. 2021-G-0029

**State's Incorrect Portrayal of Firing Position:**

{¶52} Appellant's final allegation of prosecutorial misconduct relates to the prosecutor acting out appellant's firing position during closing arguments. The prosecutor said "I want you to look at that stuff and remember that the Defendant says he just kept shooting at the ground. But what, Matt Burns just wandered in? Is that what happened, he just wandered into the line of fire? He never changed firing position?" When the prosecutor said this, appellant's trial counsel objected and said, "The firing position he is demonstrating is the exact opposite of what my client – not the exact opposite – my client testified he never straightened the arm, that he kept it as his side, so that is actually an inaccurate depiction of my client's testimony." The prosecutor apparently immediately changed his positioning and said,

> Okay. That's fine. He's firing into the ground, just firing into the ground like this (indicating). A guy is shot in the clavicle, in the knee, in the calf, in the foot, He's just firing away into the ground, forget that, how many witnesses did you hear saying that he was raising his arm up until Matt fell to the ground. A couple witnesses thought that there was still shots going off after he fell. That would explain how he was shot in the clavicle.

{¶53} Appellant has not articulated in his brief what prejudice the incorrect firing position may have caused him. Possibly, he might claim that the demonstration was an attempt to discredit appellant's testimony that he fired into the ground. It is unclear, but the record seems to indicate that the prosecutor was pointing his arm toward the ground and that the only issue appellant's counsel took with the position was that the prosecutor straightened the arm while appellant did not say he had done this.

16

Case No. 2021-G-0029

**{¶54}** As with the prior issue, a prosecutor is given latitude as to what the evidence is shown and can draw inferences from the evidence in making arguments. *Smith,* 80 Ohio St.3d at 111.

**{¶55}** Here, the prosecutor adjusted the firing position he was demonstrating to the jury and then argued from the testimony of other trial witnesses that appellant's claimed firing position was not credible. The State did not improperly characterize the evidence or draw improper inferences in its closing argument by acting out a firing position. To the extent that position was not as described by appellant, counsel's objection and the prosecutor's adjustment rendered this mistake harmless.

**{¶56}** Accordingly, appellant's second assignment of error is without merit.

**{¶57}** Appellant's third assignment of error states:

**{¶58}** "[3.] COREY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."

**{¶59}** Appellant next asserts that his trial counsel was ineffective because counsel did not object to the court removing a character evidence jury instruction and because counsel did not acquire a self-defense expert to testify in appellant's case-in-chief.

**{¶60}** In reviewing an ineffective assistance of counsel claim, the standard we apply is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *State v. Story*, 11th Dist. Ashtabula No. 2006-A-0085, 2007-Ohio-4959, ¶ 49, quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *Strickland* at 669. "A reasonable

17

probability is a probability sufficient to undermine confidence in the outcome." *Id.* A failure to "satisfy one prong of the Strickland test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland* at 697.

**{¶61}** An appellant must demonstrate that "the attorney made errors so serious that he or she was not functioning as 'counsel' as guaranteed by the Sixth Amendment," and that he was prejudiced by the deficient performance. *Story, supra*, 2007-Ohio-4959, ¶ 49, quoting *State v. Batich*, 11th Dist. Ashtabula No. 2006-A-0031, 2007-Ohio-2305, ¶ 42. Ohio courts presume that every properly licensed attorney is competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. Henderson*, 8th Dist. Cuyahoga No. 88185, 2007–Ohio–2372, at ¶ 42.

**{¶62}** Here, as the parties were discussing jury instructions outside the presence of the jury, the State suggested striking a character evidence instruction because no evidence was offered regarding character. Initially, appellant's trial counsel disagreed, suggesting the State's questions about appellant's firearm ownership and having gone into bars before with a concealed weapon was character evidence. "[I]t seems to kind of

18

all be in between prior bad acts and character, and I am not 100 percent sure how to address it * * *. I don't know how the Court classified those pieces of testimony." The court said that it did not consider the testimony to be character evidence but did not have a problem leaving the instruction in. The State responded that none of the weapons were purchased illegally, and that it did not believe firearm ownership or handling is necessarily character evidence. However, the State offered that if appellant wanted to retain the instruction, it would not object. Ultimately, appellant's counsel withdrew his objection and agreed to the instruction being stricken.

{¶63} "[C]ounsel's decision not to request a jury instruction falls within the ambit of trial strategy." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶111. Neither the State nor the Court prevented appellant from using the character evidence jury instruction. After discussion about the issue, appellant's counsel voluntarily agreed to removing the instruction. This was a clear act of trial strategy, and we will not second guess counsel's decision here. Addressing the prejudice prong, the instruction in question is not in the record and appellant has failed to demonstrate how its absence has prejudiced his case. As discussed in the above assignment of error, evidence of appellant's firearm ownership was not improper character evidence.

{¶64} Next, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993), citing *State v. Thompson*, 33 Ohio St.3d 1, 10–11, 514 N.E.2d 407 (187). Thus, the "decision to rely on cross-examination should be

19

viewed as a legitimate 'tactical decision' * * *." *State v. Hartman*, 93 Ohio St.3d 274, 299, 754 N.E.2d 1150 (2001).

**{¶65}** In this case, appellant's counsel was not ineffective for failing to secure an expert on self-defense. Appellant himself testified at length about his training and experience in defensive firearms practices. Trial counsel cross-examined Lieutenant Duncan of the Chardon Police Department about the 21-foot rule, a distance where "somebody can advance with say an edged weapon, and they will strike somebody before they can actually start shooting." In addition, counsel used Duncan's extensive firearms knowledge to broadly explore firearm use in self-defense situations. Again, appellant has failed to demonstrate how trial counsel's performance fell below an objective standard of reasonable representation or how he was prejudiced thereby.

**{¶66}** Accordingly, appellant's third assignment of error is without merit.

**{¶67}** Appellant's fourth assignment of error states:

**{¶68}** "[4.] THE TRIAL COURT ERRED IN ALLOWING EVIDENCE THAT WAS NOT RELEVANT, AND MISLEADING, CONFUSING AND HIGHLY PREJUDICIAL."

**{¶69}** Next, appellant challenges the testimony of Special Agent Ashley Ornelas from the Ohio Bureau of Criminal Investigation (BCI). Ornelas testified that she was assigned to the Crime Scene Unit at the time of the incident and that she processed the crime scenes involved in this case by collecting evidence, photographing the scenes, and taking measurements. She said that she used a measuring program called Total Station to import the locations of marked items of evidence. Ornelas testified that she used this system in conjunction with Google Earth images to generate an overview of the crime scene with indicators for where items of evidence were located. She specifically testified

that the measurements reflected on that exhibit were "not exact. It's near to scale." The purpose of the exhibit was to give "a visual overview of where all the [evidence] placards were in relation to the building, and to everything else, and to also each other."

{¶70} Appellant takes issue with this because Ornelas did not measure the distances herself. He argues that the exhibit is misleading and irrelevant. He also believes her testimony was inappropriate because she could not say whether all collected shell casings were fired from the same gun. Appellant's trial counsel did not object to any of this testimony and did not object to the admission of the overview map. Therefore, we review this assignment under plain error. Further, appellant has failed to explain what prejudice he suffered as a result of Ornelas' testimony.

{¶71} Evid.R. 403(A) provides that the exclusion of relevant evidence is discretionary if its probative value is "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶72} Ornelas explained the process by which she collected, photographed, and marked evidence at the scene. She used a computer assisted field measuring device to measure the location of the evidence placards and then imposed an arial image of the scene from Google Earth to assist the jury in understanding the context and location of items of evidence. Ornelas explained that the exhibit is not exact but is "near to scale." An exhibit and supporting testimony depicting an arial view of the crime scene with the marked positions of evidence found at the scene is certainly probative and relevant evidence.

{¶73} In this case, where the jury conducted a jury view of the Chardon Tavern and had a "near scale" arial view of the scene with evidence locations marked, we cannot

21

conclude that Ornelas' testimony or exhibits admitted through her field work were unfairly prejudicial, let alone that the probative value was "substantially outweighed by the danger of unfair prejudice."

**{¶74}** Accordingly, appellant's fourth assignment of error is without merit.

**{¶75}** Appellant's fifth assignment of error states:

**{¶76}** "[5.] THE TRIAL COURT ERRED WHEN IT CONSIDERED COREY'S PRIOR DISMISSED CASES WHEN CONSIDERING COREY'S SENTENCE AND COREY'S SENTENCE IS EXCESSIVE."

**{¶77}** Appellant makes two related arguments pertaining to sentencing in this assignment of error. First, he asserts that the trial court erred by considering appellant's dismissed criminal cases when sentencing him in this matter. Second, he argues that the sentence was excessive because he did not have any prior felonies, he showed remorse, and that he committed the offense without malice aforethought.

**Prior Dismissed Cases:**

**{¶78}** First, appellant asserts that the trial court improperly considered a prior dismissed case contained in appellant's pre-sentence investigation when sentencing appellant. Appellant does not cite to any authority that suggests to us that this is improper while the State cites to *State v. Bowser,* 2nd Dist. No. 23555, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714.

**{¶79}** We have previously cited *Bowser* approvingly for distinct but related sentencing issues. *See State v. Wilson*, 11th Dist. Ashtabula No. 2020-A-0003, 2020-Ohio-3857, ¶ 20, citing *Bowser* (consideration of the underlying facts in no way abrogates the offender's plea agreement); *State v. Kittelson*, 11th Dist. No. 2016-L-062, 2016-Ohio-

22

8430, 78 N.E.3d 355, ¶ 45, citing *Bowser* at ¶ 15 ("it is well-established in Ohio law that the court may consider information beyond that strictly related to the conviction offense"); *State v. Jevnikar*, 11th Dist. Lake No. 2016-L-006, 2016-Ohio-8113, ¶ 44, citing *Bowser* at ¶ 14, ("the evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned, like it was during trial, with the narrow issue of guilt.").

{¶80} *Bowser* discusses, at length, the need for a trial court to have a wide discretion to use different sources and types of evidence in imposing sentence. *Bowser* at ¶ 14. R.C. 2951.03(A), governing the contents of presentencing investigation reports,

> no doubt results in the sentencing court considering evidence that would be inadmissible at trial * * * [s]o, the court may consider the offender's prior arrests, even if none yields prosecution. * * * The court may also consider facts that support a charge of which the offender is ultimately acquitted. * * * [A] sentencing court may consider a criminal charge and supporting facts that are dismissed under a plea agreement." (internal citations omitted).

*Id.* at ¶ 15-16.

{¶81} In this case, the trial court carefully and appropriately considered two prior dismissed charges against appellant among nine separate criminal incidents and 18 traffic offenses contained in the presentence investigation. In one of those dismissed disorderly conduct cases, appellant allegedly pulled a handgun during an altercation. The court said that "even though this case was dismissed, it's significant to look at the fact this did involve Mr. Corey having a gun in a [diner], and that is concerning as we look at this case." The court emphasized "I acknowledged all along that those cases were dismissed. However, I do find, and when we looked at this pre-sentence investigation, there was an incident involving Mr. Corey, and that at least some of these facts are part of his history."

23

Case No. 2021-G-0029

**{¶82}** Based on this record, the trial court appropriately considered prior dismissed criminal cases against appellant. The court acknowledged that it was dealing with dismissed criminal charges, but nevertheless noted the similarities between one dismissed case in particular and the instant case before the court.

**Excessive Sentence:**

**{¶83}** Second, appellant argues that his sentence is contrary to law because it is excessive. Appellant contends that R.C. 2953.08(G)(2) allows this court to increase, reduce, or otherwise modify a sentence when it is contrary to law because the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.

**{¶84}** Appellant cites R.C. 2953.08(G)(2)(a) as our standard of review for felony sentencing matters. However, division (G)(2)(a) of that statute only applies to challenges to sentences imposed under R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C)(4), and R.C. 2929.20(I), and appellant does not challenge his sentence in reference to any of these statutes. *See State v. Shannon*, 11th Dist. Trumbull No. 2020-T-0020, 2021-Ohio-789, ¶ 7. Here, appellant claims that the trial court issued a sentence contrary to law under R.C. 2929.12. As such, the standard provided under R.C. 2953.08(G)(2)(a) is inapplicable to this matter. *Id.*

**{¶85}** We reiterate our prior holdings, and admonish all counsel in this district to observe, R.C. 2953.08(G)(2)(a) does not provide a basis for an appellate court to modify or vacate a sentence based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.2d 649, ¶ 27-29; *e.g., State v. Reffitt*, 11th Dist. Lake No. 2021-L-129, 2022-

24

Ohio-3371; ¶ 17; *State v. Stevens*, 11th Dist. Lake No. 2021-L-105, 2022-Ohio-3781, ¶ 19; *State v. Pruitt*, 11th Dist. Trumbull No. 2021-T-0012, 2021-Ohio-3793, ¶ 10; *State v. Loparo*, 11th Dist. Lake No. 2020-L-120, 2021-Ohio-2179, ¶ 13; *State v. Mizicko*, 11th Dist. Trumbull No. 2021-T-0017, 2022-Ohio-262, ¶ 22; *State v. Potter*, 11th Dist. Lake No. 2021-L-053, 2021-Ohio-3485, ¶ 7. The fundamental premise of these precedents is that R.C. 2929.11 and R.C. 2929.12 are not statutes to which R.C. 2953.08(G)(2)(a) even refers. More fundamentally, neither R.C. 2929.11 nor R.C. 2929.12 calls for the sentencing court to even make "findings."

{¶86} Under *Jones*, an appellate court reviewing alleged error under R.C. 2929.11 and R.C. 2929.12 no longer evaluates whether the sentencing court's findings for those sentences are unsupported by the record. Instead, the court "must simply analyze whether those sentences are contrary to law." *Id.* at ¶ 11. *Jones* held that "legal dictionaries define 'contrary to law' as 'in violation of statute or legal regulations at a given time,' *e.g., Black's Law Dictionary* 328 (6th Ed. 1990)." *Id.* at ¶ 34. However, *Jones* held that the phrase "contrary to law" is not "equivalent" to an "appellate court's conclusions that the record does not support a sentence under R.C. 2929.11 or 2929.12." *Id.*

{¶87} Appellant does not assert that the trial court failed to consider the purpose and principles of felony sentencing in R.C. 2929.11(A) or that the trial court did not assess the serious and recidivism factors of R.C. 2929.12(C) and (D). Instead, appellant argues that his sentence is excessive based on the seriousness and recidivism factors. *See* R.C. 2929.12(C)(2), (C)(3), and (D)(5). This argument is unavailing because R.C. 2953.08(G)(2)(b) does not provide a basis for an appellate court to modify or vacate a

Case No. 2021-G-0029

sentence based on its view that the sentence is not supported by the record under R.C. 2929.11(A) and 2929.12(C) and (D). *Id.* at ¶ 39.

**{¶88}** We have already determined that it is not contrary to law for a sentencing court to consider dismissed criminal matters in imposing sentence. Appellant does not otherwise argue that his sentence is contrary to law.

**Consecutive Sentences:**

**{¶89}** Additionally, appellant's arguments could be construed as an argument that his consecutive sentences were excessive and therefore improperly imposed. There are three ways an appellant can challenge consecutive sentences on appeal. *State v. Lewis*, 11th Dist. Lake No. 2001-L-060, 2002-Ohio-3373, ¶ 6. First, the appellant may argue that the sentencing court failed to state the findings for consecutive sentences that R.C. 2929.14(C)(4) requires. *State v. Torres*, 11th Dist. Lake No. 201-L-122, 2003-Ohio-1878, ¶ 18; R.C. 2953.08(G)(1). Second, the appellant may argue that the record clearly and convincingly does not support the findings the sentencing court made to justify consecutive sentences. *State v. Lewis*, at ¶ 7; R.C. 2953.08(G)(2)(a). Third, the appellant may argue that his sentence is clearly and convincingly otherwise contrary to law. R.C. 2953.08(G)(2)(b).

**{¶90}** R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

26

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶91} In making its findings for consecutive sentences, the sentencing court is required to engage in the analysis for consecutive sentencing and specify the statutory criteria warranting its decision. *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 26. While the sentencing court is not required to state exact reasons supporting its findings, the record must contain a clear basis upon which a reviewing court can determine that the sentencing court's findings for imposing consecutive sentences are supported by the record. Id. at ¶ 27-28.

{¶92} At sentencing, the trial court found that the tampering with evidence offense was part of a separate course of conduct and that appellant's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by the appellant.

{¶93} The court said "I thought a lot about this * * *. You know, while that was kind of the same course of conduct where, you know, he is leaving the bar. He just shot the guy. He is on 911, creating this ruse, and he is going to hide the gun. It really is a separate and district, and really terrible form of the offense, And I think it does, the Tampering

27

charge does call for consecutive sentences because I don't think that combining that with the prison sentence * * * would adequately reflect the seriousness of his conduct in that instance." Appellant has not shown how this record does not clearly and convincingly support the findings of the sentencing court to impose consecutive sentences.

{¶94} Accordingly, appellant's fifth assignment of error is without merit.

{¶95} Appellant's sixth assignment of error states:

{¶96} "[6.] COREY'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶97} Appellant asserts that his attempted murder conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence. App.R. 16(A)(7) requires an appellant's brief to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "It is not an appellate court's duty to guess the arguments of an appellant." *Dennis v. Nickajack Farms, Ltd.*, 11th Dist. Geauga No. 2014–G–3188, 2014-Ohio-5468, ¶ 6. Appellant does not argue that his tampering with evidence conviction is not supported by sufficient evidence or against the manifest weight of the evidence, and we will not make those arguments for him.

{¶98} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins,* 78 Ohio St. 3d at 389. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*,

28

offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them." (Emphasis sic.) *Id.* at 386, quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶99} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*

{¶100} The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶101} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any of the outcome of the case and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced

29

at trial, is deferential to the weight and factual findings made by the jury. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶102} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶103} In this case, appellant was convicted of Attempted Murder in violation of R.C. 2903.02(A) and R.C. 2923.02, which provides that: "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy;" "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The trial court gave the jury a self-defense instruction at appellant's request. The General Assembly amended the provisions in R.C. 2901.05 that define self-defense effective on March 28, 2019.

{¶104} Since that amendment, R.C. 2901.05 now places the burden of persuasion upon the State to disprove at least one of the elements of self-defense beyond a reasonable doubt. *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (11th Dist.), *appeal not allowed*, 160 Ohio St.3d 1460, 2020-Ohio-5332, 157 N.E.3d 794, *reconsideration denied*, 160 Ohio St.3d 1512, 2020-Ohio-6835, 159 N.E.3d 1172; R.C. 2901.05(A).

{¶105} At the time of appellant's offense, the elements of a valid claim of self-defense were: "(1) the defendant was not at fault in creating the situation giving rise to

30

the affray and (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus; *State v. Mogul*, 11th Dist. Trumbull Nos. 97-T-0018 & 97-T-0067, 1998 WL 258164, *3 (May 15, 1998)." *Id.* at ¶ 41. "The degree of force permitted depends upon what is reasonably necessary to protect that individual from the imminent use of unlawful force." *Id.* at ¶ 42, citing *Mogul*, 1998 WL 258164 at *3.

{¶106} We must determine whether the jury lost its way and created a manifest miscarriage of justice in finding the State disproved at least one of the elements of self-defense beyond a reasonable doubt. The State provided partial security camera evidence of the events. Unfortunately, the security camera malfunctioned shortly before the shooting. In addition, the State presented testimony from seven witnesses at the bar.

**At Fault in Creating the Situation Giving Rise to the Affray:**

{¶107} Although appellant testified that Burns approached him with a knife and that he was threatening appellant, no other witness corroborated this version of events. Witnesses described Burns' actions as admonishing appellant to leave the bar. No one, other than appellant, described Burns' actions toward appellant as threatening or violent. Witnesses testified that Burns had nothing in his hands and that he spoke to appellant with open palms. Despite this, appellant stated that he drew a weapon and fired what he described as a warning shot. Burns testified that he felt he could not safely flee without

31

being shot and attempted to disarm appellant. Based on this evidence, we cannot find that appellant was not at fault in creating the situation giving rise to the cause of the affray.

**Bona Fide Belief of Imminent Danger:**

{¶108} Although the testimony about appellant's reasonable belief that he was in imminent danger was conflicting, the jury was free to believe any witness in whole or in part. The State offered significant evidence from multiple eyewitnesses that would tend to discredit appellant's bona fide belief that he was in imminent danger.

{¶109} Appellant's actions after the shooting tend to discredit his testimony. Appellant drove away from the scene. Although he called 911, he never stated to the 911 operator that he had a weapon or that he had shot someone. During the 911 call, he hid the weapon under a dumpster. At the time of his arrest, he only vaguely stated that the weapon was somewhere safe.

{¶110} The jury found appellant guilty of tampering with evidence in violation of R.C. 2921.12. Tampering with evidence "involves elements of dishonesty, to the extent that the defendant has acted in a way to mislead an investigation or evade prosecution. *See State v.* Oliver, 7th Dist. Mahoning No. 12 MA 212, 2015-Ohio-2684, ¶ 27." *Allen v. Altiere,* 11th Dist. Trumbull No. 2015-T-0065, 2015-Ohio-3556, ¶ 26. In finding appellant guilty of a crime of dishonesty, the jury could have reasonably found that also weakened appellant's credibility in his self-defense testimony.

**Reasonable Force:**

{¶111} At least one witness stated that appellant continued firing at Burns after he fell to the ground, stating that appellant fired an additional seven or eight shots once Burns collapsed. "The degree of force permitted depends upon what is reasonably necessary

32

to protect that individual from the imminent use of unlawful force." *Id.* at ¶ 42, citing *Mogul*, 1998 WL 258164 at *3. The jury could have reasonably found that appellant's continued firing was not a reasonable use of force.

**Duty to Retreat:**

{¶112} On April 6, 2021, R.C. 2901.09 was amended to eliminate the duty to retreat when using deadly force "if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B). This case originated prior to that amendment. However, the trial court retroactively applied R.C. 2901.09(B) in the jury instruction given to the jury in this case.

{¶113} "While the change in the law is relatively straightforward, when it should be applied * * * is an unsettled question." *State v. Degahson*, 2nd Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 15. The Second and Eighth Districts have found that that the amendment to the duty to retreat is substantive in nature and is not retroactive. *Id.* at ¶ 20; *State v. Duncan*, 8th Dist. Cuyahoga No. 110784, 2022-Ohio-3665, ¶ 28-29.

{¶114} Neither party has directly raised this issue on appeal. The jury found appellant guilty despite the jury instruction not imposing a duty to retreat before using deadly force upon him and we can resolve this assignment of error without determining whether the trial court should have done so. Therefore, we decline to issue an advisory opinion on this point. *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.,* 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 60.

33

{¶115} . Based on the evidence in this case, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.

{¶116} Accordingly, appellant's sixth assignment of error is without merit.

{¶117} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

FREDERICK D. NELSON, J., Retired, Tenth Appellate District, sitting by assignment, concur.

Case No. 2021-G-0029